**2013-1227**

In The

# United States Court of Appeals

### For The Federal Circuit

## CARDPOOL, INC.,

*Plaintiff – Appellant*,

**v.**

## PLASTIC JUNGLE, INC.,

*Defendant – Appellee.*

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 12-CV-4182, JUDGE WILLIAM H. ALSUP.

———————————

### BRIEF OF APPELLANT

———————————

Edward A. Pennington
John P. Moy
Chadwick A. Jackson
SMITH, GAMBRELL & RUSSELL, LLP
1055 Thomas Jefferson Street, NW, Suite 400
Washington, DC  20007
(202) 403-4300
epennington@sgrlaw.com
jmoy@sgrlaw.com
cjackson@sgrlaw.com

*Counsel for Appellant*                          *Dated:  July 29, 2013*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Cardpool, Inc. certifies that:

1.    The full name of every party or *amicus* represented by me is:

Cardpool, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:   Not Applicable

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties or *amicus* represented by me are:

Blackhawk Network, Inc.

Blackhawk Network Holdings, Inc. (NDAQ: HAWK)

Safeway Inc. (NYSE: SWY)

4.    The names of all law firms and partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this court are:

Smith, Gambrell & Russell, LLP: Edward A. Pennington, John P. Moy, Chadwick A. Jackson.

Murphy & King, P.C.: Edward A. Pennington, John P. Moy, Chadwick A. Jackson.

Mitchell & Company:  Brian E. Mitchell

Date:  July 29, 2013                    _s/ *Chadwick A. Jackson*_____
                                                Chadwick A. Jackson

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ...................................................................iv

USE OF EMPHASIS IN QUOTATIONS .................................................vi

STATEMENT OF RELATED CASES .................................................. vii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE ..................................................................3

STATEMENT OF THE FACTS ................................................................7

SUMMARY OF THE ARGUMENT ......................................................13

ARGUMENT ..........................................................................................17

    I.      STANDARD OF REVIEW .............................................17

    II.    THE DISTRICT COURT ERRED IN HOLDING THAT THE '048 PATENT FAILS TO CLAIM PATENT-ELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101 ...................................................17

    A.    The Claims Of The '048 Patent Satisfy The Machine Test ................20

        1.    The Specification Requires A Specially-Programmed computer For The Gift Card Validation And Exchange Requested By A Consumer......................................................20

        2.    The Asserted Claims Of The '048 Patent Require The Use Of A Specially-Programmed Computer As Described In The Specification................................................25

3. Expert Evidence Confirms That A Specially-Programmed Computer Is Intimately And Inextricably Integrated With The Asserted Claims........................................28

4. The District Court Erred In Concluding The Requirement For Computers Was Not Sufficiently Limiting or Meaningful ...............................................................30

B. The '048 Patent Does Not Claim An Abstract Idea............................36

1. The Asserted Claims Recite Functional And Palpable Processes In The Field Of Computer Technology...................37

2. Under Each *CLS Bank* Analysis, The Asserted Claims Are Patentable Subject Matter Under § 101 .............................40

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................47

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010).......................................................................... 18, 19

*CLS Bank International v. Alice Corp.*,
717 F.3d 1269,
2013 U.S. App. LEXIS 9493 (Fed. Cir. May 10, 2013)....................... *passim*

*Gottschalk v. Benson*,
409 U.S. 63 (1972).........................................................................34

*In re Alappat*,
33 F.3d 1526 (Fed. Cir. 1994) .....................................................31

*In re Ferguson*,
558 F.3d 1359 (Fed. Cir. 2009) ...................................................17

*Juniper Networks, Inc. v. Shipley*,
643 F.3d 1346 (Fed. Cir. 2011) ...................................................17

*Mayo Collaborative Servs. v. Prometheus Labs. Inc.*,
132 S. Ct. 1289 (2012).....................................................................6

*Parker v. Flook*,
427 U.S. 584 (1978)......................................................................18

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................26

*Prometheus Laboratories, Inc. v. Mayo Collaborative Services*,
2010 U.S. App. LEXIS 25956 (Fed. Cir. 2010) ......................... 34, 44, 46, 47

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
2010 U.S. App. LEXIS 24984 (Fed. Cir. Dec. 10, 2010) ............... 19, 37, 38

*SiRF Technology*, *Inc. v. International Trade Com'n*,
601 F.3d 1319 (Fed. Cir. 2010) ....................................................................34

*Ultramercial*, *Inc. v. Hulu*, *LLC*, *et al.*,
2013 U.S. App. LEXIS 12715 (Fed. Cir. June 21, 2013)...................... *passim*

**STATUTES**

28 U.S.C. § 1295(a)(1)..............................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1338 ......................................................................................1

35 U.S.C. § 100(b) ..................................................................................18

35 U.S.C. § 101 ............................................................................... *passim*

**RULE**

Fed. R. Civ. P. 12(b)(6)........................................................... 2, 6, 17, 29

## USE OF EMPHASIS IN QUOTATIONS

All emphasis in quotations and record citations has been added, unless otherwise indicated.

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 46.5, Cardpool is not aware of any other appeal from a civil action or pending district court actions related to this appeal. However, Cardpool has filed a reexamination request for United States Patent No. 7,494,048 ("the '048 patent") which is the subject of the present appeal.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the patent infringement action giving rise to this appeal under 28 U.S.C. § 1331 and § 1338.  Cardpool timely filed its Notice of Appeal on February 12, 2013.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1) because the final judgment was entered on January 22, 2013.

## STATEMENT OF THE ISSUES

Did the District Court err in dismissing under Fed. R. Civ. P. 12(b)(6) Appellant's patent infringement action on the ground that asserted claims 1-3, 6-7, 10 and 11 of U.S. Patent No. 7,494,048 ("Asserted Claims") fail to claim patent-eligible subject matter as required by 35 U.S.C. § 101, even though each asserted claim recites concrete and tangible steps for the specially-programmed, computer-based validation and exchange of gift cards for a consumer?

## STATEMENT OF THE CASE

On July 5, 2012, Plaintiff-Appellant Cardpool ("Appellant") filed this action against Defendant-Appellee Plastic Jungle, Inc. ("Appellee") alleging that claims 1-3, 6-7, 10 and 11 ("Asserted Claims") of United States Patent No. 7,494,048 (the "'048 patent") were infringed by Appellee's gift card exchange service through its website, www.plasticjungle.com.  [A19-24].  The '048 patent teaches a novel way to prevent fraud and monetize unwanted, pre-owned gift cards through an internet based computerized gift card exchange system.  The Asserted Claims are to a computerized process of validating gift cards proffered through a user interface connected to the computerized gift card exchange system, and – where validated – the computerized gift card exchange system conducts an online exchange of the validated gift card for a money rebate or the computerized gift card exchange system issues a replacement gift card and assigns the exchange value to the newly issued gift card.[1]  [A31-32].  The '048 patent describes embodiments of the computerized gift card exchange system that include a consumer transaction server (CTS) that interfaces with the user device used by the consumer for the computerized gift card exchange and a transactional exchange server (TES) that

---

[1] In an alternative embodiment the computerized gift card exchange system facilitates the issuance and assignment of value by the merchant of the replacement card through a networked vendor interface.  [A31, 3:18-29].

interfaces with the exchange database, banking systems, and card vendors over the internet through a network interface. [A30-31].

A consumer can access the consumer transaction server (CTS) over the internet using a kiosk, ATM or personal computer ("user device"). [A31, 3:50-53]. The CTS receives the merchant name of the gift card and the gift card account number. [A31, 3:54-56]. The system queries the consumer as to whether he or she wants to exchange the gift card for another card or money and validates the card. [A31, 3:56-57]. Upon validating the card, the CTS receives the consumer's election for a money rebate or a second gift card, selects and executes that option. [A31, 3:57-4:22]. To validate the card, the transaction exchange server (TES): (1) accesses the exchange database to determine if the card is a valid card brand supported by the exchange program; and (2) accesses the vendor transaction server to verify whether it was a valid card number. [A30, 2:60-67]. If valid, the vendor transaction server (VTS) releases the equivalent of the card value minus a transaction fee to the TES. [A30, 2:67 – A31, 3:2]. Where the consumer wants a money rebate in exchange the TES can direct the amount to be transferred to the consumer bank account or issue a check to the consumer. [A31, 3:2-9]. Where the consumer wants a second gift card, the computerized gift card exchange system queries the consumer regarding the desired brand of the second card, contacts the merchant of the card desired, issues a second card, assigns the second card with the

exchange value, and coordinates the transfer of the exchange amount to the bank account of the second merchant. [A31, 3:18-29]. These process steps are shown in FIGs 2A and 2B. [A28-29].

The claimed method benefits consumers, gift card merchants, and exchange companies by enabling the real-time exchange of gift cards while preventing fraud by validating the gift cards before executing the exchange. This is not like a human-executed model of manually exchanging a gift card for money, paper gift certificates, IOUs or vouchers, which are vulnerable to fraud schemes and limited from issuing actual second gift cards credited with the exchange amount. By reducing fraud, the significant cost associated with fraud is also reduced and the consumer is able to exchange an unwanted card at a reduced cost.

As explained in the specification, the functions or process steps are implemented by "either hardware or software, or some combination thereof." [A30, 2:7-9)]. The hardware and/or software is intimately connected electronically – including through the internet – and the exchange is done through a facilitator.

Appellees have developed such an exchange platform, with network connections, driven by hardware and software, to conduct the claimed exchanges. Importantly, Appellee avails itself of a real-time electronic validation process before completing every exchange transaction as a necessary fraud prevention step.

Cardpool filed suit on July 5, 2012, accusing Plastic Jungle of infringing claims 1-3, 6-7, 10 and 11 of U.S. Patent No. 7,494,048 ("the '048 patent") in the Eastern District of Virginia.  [A22].  Plastic Jungle answered on July 27, 2012, denying infringement and pleading that the Asserted Claims are invalid.  [A35-42].  Plastic Jungle's answer contained no counterclaims.  The action was transferred to the Northern District of California where the parties filed a Joint Case Management Statement on October 30, 2012 and began discovery.  On November 9, 2012, Cardpool filed a First Amended Complaint (FAC) accusing Plastic Jungle of infringing the Asserted Claims both directly and indirectly.  [A43-49].  In lieu of answering the FAC, Plastic Jungle obtained an extension of time from Cardpool and filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  [A50].  Plastic Jungle's motion rested on the contention that Cardpool's '048 patent does not claim § 101 patent-eligible subject matter based primarily on the Supreme Court's decision, *Mayo Collaborative Servs. v. Prometheus Labs. Inc.*, 132 S. Ct. 1289, 1293 (2012). [A64-67].

On January 22, 2013, the District Court granted Appellee's motion to dismiss. [A1].  The District Court based its Order on two grounds.  First, the District Court held that the '048 "invention is unpatentable" as an "abstract idea of a gift card sale or exchange."  [A3, 16-17].  Second, the District Court held that the "machine-or-transformation test does not save this patent… [because] [i]t does not

trump the 'abstract idea' exclusion to patentability." [A4, 22-27]. In doing so, the Court failed to recognize that the machine-or-transformation test is an alternative way to determine patent claims are not abstract, not a competing test.

In reaching these decisions, the District Court did not construe any of the claim terms, failed to conduct a claim-by-claim §101 analysis, and declined to consider expert opinion regarding the proper interpretation of the Asserted Claims. The Court found no need to do so because "[t]he basic character of the claimed subject matter is readily ascertainable from the face of the patent." [A5, 27-28]. The District Court rejected Cardpool's arguments that the Asserted Claims required proper claim construction to understand the scope of the claims for a § 101 determination. [A5, 12-15]. The District Court justified this approach by noting the Federal Circuit "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101." [A5, 16-20].

## STATEMENT OF THE FACTS

### *The '048 Patent*

<u>The Asserted Claims</u>

It is undisputed that the First Amended Complaint's only count against Plastic Jungle is for patent infringement of claims 1-3, 6-7, 10 and 11 of U.S. Patent No. 7,494,048. [A55, 1-2]. Claims 4, 5, 8, and 9 were never involved in the

present case and were not subject to Defendant-Appellee's motion to dismiss for failure to state a claim.

The only independent claim of the Asserted Claims is claim 1. [A31-A32]. Claims 2-3, 6-7, 10 and 11 depend from claim 1 directly or indirectly. *Id.* All claims are to a computerized method of exchanging a validated gift card. Claim 1 contains specific computerized steps performed by the computerized gift card exchange system, including: "providing data associated with a first gift card," "validating the data associated with the gift card," and "issuing the second gift card." [A31, 4:53-61].

Claim 1 reads:

1.    A method of exchanging a gift card, comprising: providing data associated with a first gift card; validating the data associated with the first gift card; selecting either a money rebate associated with the first gift card, or a second gift card; exchanging the first gift card for either a money rebate or the second gift card; and charging a first service fee for issuing the second gift card.

Claims 2 and 3 depend from claim 1 and further specifies the type of data electronically provided by the consumer transaction server to the consumer through a user device. [A31, 4:62-65].

Claims 2 and 3 read:

2.    The method of claim 1, wherein providing data further comprises providing a merchant name.

3.    The method of claim 1, wherein providing data further
      comprises providing an account number.

Claim 6 depends from claim 1 and further specifies the type of user device

used to interface with the consumer transaction server to provide data associated

with the gift card, a personal computer.  [A32, 5:4-6].

Claims 6 reads:

6.    The method of claim 1, wherein providing the data
      associated with the gift card occurs with employment of a
      personal computer.

Claim 7 depends from claim 1 and further specifies that funds associated

with the first gift card are released through a network interface with the vendor of

the first gift card to the computerized gift card exchange system.  [A32, 5:7-8].

Claim 7 reads:

7.    The method of claim 1, further comprising releasing
      funds associated with the first gift card by a vendor.

Claim 10 depends directly from claim 1 and claim 11 depends from claim

10.  Claims 10 and 11 further claim a computerized step of "correlating the

exchange of the gift card with at least one other piece of data."  [A32, 6:3-9].  This

data is kept in a database and correlated by the computerized gift card exchange

system to be used by marketers to determine buying/exchange patterns.  [A31,

3:30-46].

10.    The method of claim 1, further comprising correlating the exchange of the gift card with at least one other piece of data.

11.    The method of claim 10, wherein the step of correlating consists of at least one of the group of the trade name of the associated second gift card, the time of the exchange, and the type of consumer transaction device.

The Specification

The specification of the '048 patent consists of seven pages (including the claims) with three figures (Figs. 1, 2A and 2B) depicting the invention.  [A26-32].



*Fig. 1*

Figure 1 shows embodiments of the claimed method of exchanging a gift card.  [A27].  Three exemplary embodiments of the consumer interface are depicted where the consumer transaction server can provide data associated with a

first gift card to the consumer, namely, by phone (DTMF tones), by PC computer, or by kiosk (or ATM). [A31, 3:51-53]. The computerized gift card exchange system is shown to be networked to the exchange database which is, in turn, networked to a vendor server to conduct the validation of data associated with the first gift card. [A27, A30, 2:59-67]]. Upon validation, the computerized gift card exchange system is in communication with the consumer to select a money rebate or a second gift card in response to consumer input. [A28, A29, A31, 3:56-57]. Upon such selection, the exchange is conducted by the exchange transaction server, which is networked with the vendor and consumer banks in the event a money rebate is selected or the vendor transaction server and exchange database if the option is to issue a second gift card. [A27-A29, A30, 2:58 – A31, 3:29].

The specification also discloses a marketing function of the computerized gift card exchange system where data is correlated with the exchanges made over the TES to aid in the determination of marketing trends for use in determining buying/exchange patterns of consumers. [A31, 3:30-45]. The specification indicates the data is kept in the exchange database of the TES and searches for such correlated data can be done by the data mining and query system of the computerized gift card exchange system. *Id.*

### *The District Court's Order Dismissing The First Amended Complaint*

On January 22, 2013 the District Court for the Northern District of California ("District Court") granted defendant Plastic Jungle, Inc.'s motion to dismiss on the grounds that the Asserted Claims are to "an abstract idea, and therefore the subject matter of the patent is ineligible under Section 101."  [A2, 13-16].

In granting the motion to dismiss, the District Court elected to not construe the claim terms of the Asserted Claims or perform a claim-by-claim analysis under Section 101.  Instead, the District Court focused on a stripped-down version of claim 1, stating "the conclusion is inescapable that the invention merely covers a simple business transaction."  [A3, 8-9].  Further finding that "Plaintiff is attempting to assert a monopoly over the abstract idea of a gift card sale or exchange."  [A3, 16-17].  Later in the opinion the Court further states that the claims are to several "abstract ideas of verifying and selling a gift card for value, or exchanging it for another gift card" and that the claims did not add enough "to allow the method described to qualify as a patent-eligible process that *applies* the abstract ideas."  [A3, 22-26].  In so deciding, the District Court acknowledged that the claims required computer implementation but concluded that "Plaintiff's computerized implementation adds nothing of significance to the abstract idea

underneath" – likening the computerized gift card exchange system of the '048 patent to a "ledger."  [A4, 2-7].

The District Court rejected Plaintiff's arguments that the invention must be implemented by a networked computerized system, rejected Plaintiff's arguments that the invention must be viewed as a whole, rejected Plaintiff's arguments that the terms of the Asserted Claims should be construed to conduct an appropriate analysis under Section 101, and declined to consider the expert declaration submitted by Plaintiff's regarding the interpretation of the Asserted Claims.  [A4, 13-21, A5, 12-15, 25-27].

In granting the motion to dismiss, the District Court found it "unnecessary" to consider the expert declaration regarding the proper interpretation of the Asserted Claims.  [A5, 25-27].  The District Court also found "[c]laim construction is not necessary" and evidently found it unnecessary to conduct a claim-by-claim section 101 analysis because "[t]he basic character of the claimed subject matter is readily ascertainable from the face of the patent." [A5, 27 – A6, 3].

As shown herein, the District Court erred in its approach, erred in its reasoning, and, as a result, erred in its conclusion.

## SUMMARY OF THE ARGUMENT

The Motion to Dismiss is limited to the Asserted Claims of the '048 patent, which are to a concrete and tangible method of remotely exchanging validated gift

cards for money or another gift card in real-time.  In holding the Asserted Claims of Cardpool's '048 patent invalid for failure to claim patent-eligible subject matter and for claiming an abstract idea, the District Court erred:

### *The Asserted Claims Of The '048 Patent Satisfy The Machine Test*

Although the "machine or transformation" test is no longer the sole test to determine patentability, if a claimed invention is tied to a machine (including a specially-programmed computer), it satisfies the patent eligibility requirements under section 101 of the Patent Act.  The Asserted Claims of the '048 patent, its specification, and file history demonstrate that a specially-programmed computer is required to conduct the real-time, remote gift card validation and exchange process.  This is sufficient to tie the claims to a machine.  The District Court failed to conduct any machine or transformation analysis and dismissed it as being moot in view of the District Court's finding that the invention of the '048 patent is an abstract idea.  [A4, 22-27].  The District Court erred in reaching this conclusion because it declined to construe any claim terms and gave insufficient consideration to the entirety of the claims or specification.  [A6, 1].  Properly construed in light of the specification, the steps recited in the Asserted Claims necessarily require a specially-programmed computer to conduct the remote, real-time gift card validation and exchange process.

### *The '048 Patent Does Not Claim An Abstract Idea*

The claims of the '048 patent recite concrete and tangible steps, which include gift card validation and exchange using a specially-programmed computerized gift card exchange system.  The Court and Appellee have asserted that the abstract idea is the exchange of chattel but the claims do not monopolize the exchange of chattel, the claims only relate to the exchange of gift cards.  [A4, 20-21].  Even within that limited field the claims only relate to the exchange of *validated* gift cards.  [A31, 4:52-61].  "If the card is found to be not valid…then the flow stops…."  [A29, A31, 3:60-61, 4:12-13].  And it is clear from the claims and specification that the steps for performing the claimed gift card exchange involve a network of specially-programmed computer systems throughout the exchange process.  [A30, 2:7-14].  For example, validation requires a specially-programmed computer system to interface with the card record holder to determine if the gift card itself is valid and confirm the actual balance on the gift card at the time of the exchange inquiry.  [A30, 2:58-67].

Rather than look to the particular claims and the entirety of the claim elements recited therein, the District Court characterized the invention as "little more than…a 'millennia old practice of an in-kind exchange of chattel' – plus a computer."  [A4, 20-21].  With that characterization the District Court found the entire invention to be an abstract idea.  Contrary to the District Court's general

conclusion, this Court has conclusively held that subject matter eligibility must be determined "on a claim by claim basis." *Ultramercial*, *Inc. v. Hulu*, *LLC*, *et al.*, 2013 U.S. App. LEXIS 12715, *9 (Fed. Cir. June 21, 2013).  This Court has also distinguished between a patent ineligible abstract idea and a practical application of an idea.  *Id.* at *23-29.  It is clear that the Asserted Claims are directed to the latter – a practical application of an idea.  The Asserted Claims are not to just any kind of sale of any type of chattel but a specific real-time process of validated gift card exchange using a specially-programmed computer.  The process is not to the broad concept of "millennia old practice of an in-kind exchange of chattel – plus a computer."  [A4, 21].  The Asserted Claims of the '048 patent do employ a computer but not a general computer, a specially-programmed computerized gift card exchange system that employs computer algorithms and interfacing among a number of computer systems in the network to conduct the process of validation, exchange, issuance, release of funds and controlled interaction with a consumer.  [A27-29].  The computerized system is to a particular field, namely validated gift card exchange, and implements particular steps.  Thus the claims are not abstract.

Accordingly, the District Court erred in dismissing the case based on its conclusion that Cardpool's patent is directed towards patent-ineligible subject matter.  The Court should reverse and remand.

# ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews a district court's dismissal for failure to state a claim under the law of the regional circuit. *Juniper Networks*, *Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (citation omitted).  The Ninth Circuit reviews a district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) *de novo*. *Ultramercial*, *Inc. v. Hulu*, *LLC*, *et al.*, 2013 U.S. App. LEXIS 12715, *4-5 (Fed. Cir. June 21, 2013).  This court also reviews the ultimate determination regarding patent-eligible subject matter under 35 U.S.C. § 101 without deference. *Id.*; *see also*, *In re Ferguson*, 558 F.3d 1359, 1363 (Fed. Cir. 2009.

## II.    THE DISTRICT COURT ERRED IN HOLDING THAT THE '048 PATENT FAILS TO CLAIM PATENT-ELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101

Section 101 of the Patent Act sets forth the categories of patentable subject matter:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.  The Patent Act defines a "process" as a "process, art, or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."  35 U.S.C. § 100(b).

The Supreme Court's recent *Bilski* decision emphasized the breadth of patent-eligible processes under the Patent Act.  Rejecting this Court's "machine or transformation" test as the "sole test for deciding whether an invention is a patent-eligible 'process,' " the Supreme Court held that the proper patentability standard for process claims is whether the claim falls within one of the "three specific exceptions to § 101's broad patent-eligibility principles:  'laws of nature, physical phenomena, and abstract ideas."  *Bilski v. Kappos*, 130 S. Ct. 3218, 3225-27 (2010) (omitting citations).  Beyond these three exceptions, the Supreme Court made clear that no other exception to patent eligibility exists:

> Any suggestion in this Court's case law that the Patent Act's terms deviate from their ordinary meaning has only been an explanation for the exceptions for laws of nature, physical phenomena, and abstract ideas.  *See Parker v. Flook*,  427 U.S. 584, 599-589 (1978).  This Court has not indicated that the existence of these well-established exceptions gives the Judiciary *carte blanche* to impose other limitations that are inconsistent with the test and the status's purpose and design.

*Id.* at 3226.

In evaluating whether a patent claim purports to cover a law of nature, physical phenomena, or abstract idea, the Supreme Court did not reject the use of

the "machine or transformation" test.  *Id.* at 3227.  Rather, the Supreme Court

relegated the "machine or transformation" test to a "clue" for patent eligibility.

*See*, *id.* Accordingly, if a claimed process satisfies the machine or transformation

test, it satisfies the patent-eligibility requirement of 35 U.S.C. § 101.  But if the

claimed process fails both the machine and transformation test, it is still patent

eligible so long as it does not fall within one of the established exceptions for laws

of nature, physical phenomena, and abstract ideas.  *See Research Corp. Techs.*, *Inc.*

*v. Microsoft Corp.*, 2010 U.S. App. LEXIS 24984 (Fed. Cir. December 10, 2010).

     The Asserted Claims of the '048 patent satisfy the machine test.  Indeed,

every step of claim 1, the sole independent claim, requires communications

between the computerized gift card exchange system and the consumer and takes

place through a network of specially-programmed computers.

     Even if, *arguendo*, the Asserted Claims of the '048 patent do not satisfy the

"machine" test, the claims fall within none of the recognized exceptions to § 101.

It is clear the claims have nothing to do with laws of nature or physical

phenomena.  The sole exception considered by the District Court was the exception

for "abstract ideas."  [A2-6].  But every claim contains concrete, tangible

limitations.  Contrary to claims covering mathematical algorithms, the claimed

validated gift card exchange of the Asserted Claims cannot be performed in the

abstract on paper or through mental thought.  Thus, every such claim satisfies the patent-eligibility requirement of § 101.

**A.     The Claims Of The '048 Patent Satisfy The Machine Test**

**1.     The Specification Requires A Specially-Programmed computer For The Gift Card Validation And Exchange Requested By A Consumer**

The specification of the '048 patent demonstrates that the gift card validation and exchange can *only* be performed through a specially-programmed computer. For example, Figures 2A and 2B show flow charts of one embodiment of the validated gift card exchange of the '048 patent. [A28-29].  Nearly every step of the flow diagram must be implemented through a specially-programmed computer.



*FIG. 2A*

In Step 220, the consumer accesses the computerized gift card exchange system. [A29, A31, 3:49-50]. In Step 230, the consumer electronically provides the merchant name on the gift card. [A29, A31, 3:54-55]. In Step 240, the consumer provides the gift card account number on the gift card. [A29, A31, 3:55-56]. In Step 250, the system queries the consumer as to whether cash or another gift card is desired. [A29, A31, 3:56-58].



**FIG. 2B**

If the consumer chooses cash, the system checks the gift card account number for validity in step 263. If found valid, the exchange process proceeds and credit is transferred from the named merchant to the computerized gift card exchange system in step 275. [A29, A31, 3:61-53]. If not found valid, the exchange process is terminated in step 295. [A29, A31, 3:60-61]. Thereby, only

validated gift cards can be exchanged through the computerized gift card exchange system, mitigating fraud.  If the consumer elected a money refund, the computerized gift card exchange system converts the gift credit to a form usable by the consumer, such as printing a check to the consumer.  [A29, A31, 3:64-65].  In one embodiment, a kiosk is used to convey the money or a new gift card to the consumer.  [A27].  In another, a personal computer may be used by the consumer to interface with the computerized gift card exchange system.  [A27].

Where the consumer chooses a second gift card in step 250, the gift card account is validated by the computerized gift card exchange system in step 266.  [A29, A31, 4:10-12].  Again, if the gift card is not valid, the process is terminated in step 295.  [A29, A31, 4:12-13].  However, if the gift card is validated, the credit is transferred from the merchant to the computerized gift card exchange system in step 277.  [A29, A31, 4:13-15].  In step 283, the selected second gift card is purchased online, assigned value and issued to the consumer.  [A29, A31, 4:16-19].  The consumer may interface with the computerized gift card exchange system through a kiosk to output the new gift card or through a personal computer.  [A29, A31, 4:20-22].



*Fig. 1*

Figure 1 depicts an embodiment of computerized gift card exchange system and various network interfaces with the consumer, the card merchants, and financial services. Each interface is through the computerized gift card exchange system, such as through an internet connection with the interfacing servers, each of which is specially-programmed for the specific purpose of conducting the validated gift card exchange.

The specification expressly states that "all functions described herein may be performed in either hardware or software, or some combination thereof. In a preferred embodiment, however, the functions are performed by a processor, such

as a computer or an electronic data processor, in accordance with code, such as computer program code, software, and/or integrated circuits that are coded to perform such functions, unless indicated otherwise." [A30, 2:7-14]. Also, "[t]he capabilities outlined herein allow for the possibility of a variety of programming models. This disclosure should not be read as preferring any particular programming model, but is instead directed to the underlying mechanisms on which these programming models can be built." [A31, 4:32-37]. Notably absent from the disclosure is any embodiment that does not utilize a networked computer system specially-programmed to conduct a validated gift card exchange.

### 2. The Asserted Claims Of The '048 Patent Require The Use Of A Specially-Programmed Computer As Described In The Specification

Claims 1-3, 6-7, 10 and 11 have been asserted in the First Amended Complaint as being infringed by Plastic Jungle. Claim 1 is the only independent claim, asserted claims 2-3, 6-7, 10 and 11 depend directly or indirectly from claim 1. Claim 1 reads as follows:

> 1. A method of exchanging a gift card, comprising: providing data associated with a first gift card; validating the data associated with the first gift card; selecting either a money rebate associated with the first gift card, or a second gift card; exchanging the first gift card for either a money rebate or the second gift card; and charging a first service fee for issuing the second gift card.

Every limitation in independent claim 1 requires the use of a specially-programmed computer as described and depicted in the specification. *See*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.")  These limitations describe steps directed to validated, real-time gift card exchange as follows:  (1) providing data associated with a first gift card; (2) validating the data associated with the first gift card; (3) selecting either a money rebate associated with the first gift card, or a second gift card; (4) exchanging the first gift card for either a money rebate or the second gift card; and (5) charging a first service fee for *issuing* the second gift card.

Figure 1 of the '048 patent shows a networked system with three ways of providing data associated with the gift card:  consumer pcs (107) over the internet, a kiosk or ATM, or a phone system (105, 110) through DTMF tones.  [*See*, A31, 3:50-53).  These interface with the computerized gift card exchange system, the consumer transaction server (120), which is programmed for controlled interaction with a consumer regarding *providing* such data and for *selecting* money or a second gift card.  [A30, 2:35-53].  The computerized gift card exchange system is networked and specially-programmed for interaction with vendor servers through the vendor transaction server (145), exchange database (150), a data mining and

query system (170), for *validating*, *exchanging*, *issuing*, and *correlating*.  [A27, A30, 2:41-3:45].

Additional limitations from the asserted dependent claims further require the use of a specially-programmed computer.  For example, the personal computer of claim 6 interfaces with the specially-programmed computer to provide the data associated with the gift card.  Figure 1 of the '048 patent depicts the network connection from consumer PCs (107) through the internet to the consumer transaction server (120).  [A27].  Claim 7 adds the step of "releasing funds associated with the first gift card by a vendor."  Figure 1 depicts the computerized gift card exchange system networked to the vendor transaction server (145) and vendor banks (180) to release funds from the linked gift card account.  [A27].

Under parallel facts, the Federal Circuit in *Ultramercial, Inc. v. Hulu, LLC* looked to the specification to find the claims to be patentable subject matter.  The same analysis applies here, almost verbatim:

"Figure 1, alone, demonstrates that the claim is not to some disembodied abstract idea but is instead a specific application of a method implemented by several computer systems, operating in tandem, over a communications network:

Almost all of the steps in this process, as explained in the flow chart of Figure 2, are tied to computer implementation:

Viewing the subject matter as a whole, the invention involves an extensive computer interface.  Unlike *Morse*, the claims are not made without regard to a particular process.  Likewise, it does not say '[sell or exchange gift cards] using a computer,' and so there is no risk of preempting all forms of [gift card sales or exchange]."  *Id.* at *43.

In sum, read in light of the specification, the only way to conduct a validated gift card exchange for consumers according to the limitations of asserted claims 1-3, 6-7, 10 and 11 is through a specially-programmed computer system – the aforementioned computerized gift card exchange system, programmed specifically for validated gift card exchange.

### 3.    Expert Evidence Confirms That A Specially-Programmed Computer Is Intimately And Inextricably Integrated With The Asserted Claims

On December 27, 2012, Cardpool obtained the expert opinion of Calvin D. Johnson regarding Asserted Claims.  Applying his forty years in the industry, including electronic financial services and fraud prevention, Mr. Johnson opined that the Asserted Claims are directed to methods involving networked computer systems and the software applications needed to perform the methods described in the patent utilizing a number of data files, residing on one or more processing units.  [A153-53].  Specifically, the claimed "validating" step requires a specially-programmed transactional exchange server networked with vender transaction

servers. [A153-54]. The claimed "issuing" step also requires that the exchange server is networked with vendor transaction servers to provision the second gift card – if that option is selected by the consumer. [A154, ¶ 16]. Mr. Johnson emphasized that when read in light of the specification, a person of ordinary skill in the art would "unquestionably understand" that the claim elements "validating", "providing data", "releasing funds associated with the first gift card", "issuing the second gift card", and "correlating the exchange of the gift card with at least one other piece of data" "require electronic interfacing with a number of servers and databases for the purpose of validating and executing the exchange transactions." [A154, ¶ 17]. Mr. Johnson concludes that "a person of ordinary skill in the art, reading the patent and prosecution history, would conclude that [the Asserted] claims only cover electronically implemented methods of exchanging gift cards where the risk of fraud is addressed through validation." [A155, ¶ 18].

Though the District Court granted Cardpool's request to file the Sur-Reply and Expert Declaration, the Court elected not to consider Mr. Johnson's expert opinion because a Rule 12(b)(6) motion to dismiss must be limited to the content of the First Amended Complaint. However, even a cursory review of Mr. Johnson's opinion would lead to the conclusion that the Asserted Claims are certainly not "clearly and convincingly" directed to an abstract idea and that claim construction is not necessary. To the contrary, Mr. Johnson concurs with Cardpool

that the Asserted Claims are clearly to patentable subject matter under the machine

or transformation test and not an abstract idea.

### 4.    The District Court Erred In Concluding The Requirement For Computers Was Not Sufficiently Limiting or Meaningful

According to the District Court, the '048 patent's "computerized

implementation adds nothing of significance to the abstract idea underneath." [A4,

2-3].  In reaching this conclusion, the District Court made several errors.

<u>The District Court Applied A Flawed Approach And Analysis</u>

First, the District Court entirely dismissed consideration of the machine-or-

transformation test, apparently finding the Asserted Claims satisfy the test but that

the MOT test "does not trump the 'abstract idea' exclusion to patentability." [A4,

22-27].  The District Court should have taken the converse approach by conducting

an inquiry focused on "whether the claims tie the otherwise abstract idea to a

*specific way* of doing something with a computer, or a *specific computer* for doing

something; if so, they likely will be patent eligible."  *Ultramercial*, 2013 U.S. App.

LEXIS 12715, *34.  The Asserted Claims are to ***both*** – (1) the Asserted Claims are

not merely to gift card exchange but a computerized, validated gift card exchange

process; and (2) the Asserted Claims require a specially-programmed gift card

exchange platform to conduct the claimed validated gift card exchange process.  It

is undisputed that the Asserted Claims are tied to a computer in the specific way

claimed and that the computerized exchange platform plays a meaningful role in the performance of the claimed invention such that "it is as a matter of fact not likely to pre-empt virtually all uses of the underlying abstract idea, leaving the invention patent eligible." *Id.* at *36.  The Federal Circuit has long held that "programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994); *Ultramercial*, 2013 U.S. App. LEXIS 12715, *42-43.  Accordingly, the Asserted Claims clearly satisfy the MOT test and, therefore, the Asserted Claims should have been found to be patent eligible.

<u>The District Court Should Have Properly Construed The Asserted Claims</u>

Second, the District Court failed to construe the claims and erred by requiring Cardpool to come forward with a construction that would show the claims were patent eligible.  It is presumed that the claims are patent eligible upon grant and in the procedural posture of a motion to dismiss for failure to state a claim, the District Court should have:  (1) construed the claims in accordance with *Markman*, as "argued strenuously" by Appellant Cardpool but rejected by the District Court; (2) required Appellee Plastic Jungle to establish that the *only plausible construction* was one that, by clear and convincing evidence rendered the

subject matter ineligible (with no factual inquiries); or (3) adopted a construction most favorable to the patentee Cardpool. *Id.* at *37. The District Court did none of these. Instead, it concluded that "[f]rom the plain language of claim 1 of the '048 patent, the conclusion is inescapable that the invention merely covers a simple business transaction" and looked to summaries in the complaint to glean claim scope instead of the actual intrinsic evidence of the Asserted Claims. [A4, 8-9, 12-14]. For this reason alone the District Court judgment should be reversed.

The District Court Should Have Conducted A Claim-By-Claim § 101 Analysis

Third, the District Court failed to conduct a claim-by-claim determination, "[c]onstruing every asserted claim and then conducting a § 101 analysis." *Ultramercial*, 2013 U.S. App. LEXIS 12715, *9. Instead, the District Court concluded "[c]laim construction is not necessary." [A6, 1]. Moreover, the District Court failed to analyze the question of eligible subject matter on a claim-by-claim basis. At best, the District considered only certain claims and portions of claim 1, (unasserted) claim 5, claim 6 and claim 11. Claims 2, 3, 7 and 10 are never even mentioned, let alone analyzed under § 101. Regarding claim 1, the District Court did not conduct a § 101 analysis of the claim elements and of the claim as a whole. For example, there is no discussion of "providing data associated with the first gift card", which even from a cursory review of the '048 patent *requires* a specially-programmed gift card exchange computer system which is able to interface with a

consumer regarding providing data. Similarly, there is no analysis of "validating the data associated with the first gift card" other than likening it to person B looking on a ledger and stating an unsupported conclusion that the validation step is "an entirely routine use of a computer." [A3, 7-8] No other claim step is considered under a § 101 analysis. In short, the District Court jumped to a conclusion that the "basic character" of the '048 patent claims was an abstract idea "from the face of the patent" and that a claim-by-claim, element-by-element § 101 analysis was unnecessary. Contrary to the District Court's conclusion, the fact that the parties disagree on the extent to which a specially-programmed computer is required to perform the recited process steps alone demonstrates that certain limitations may lack clarity and thus require construction. Considering the repeated references to specially-programmed computers in the specification, the District Court could not correctly hold that nothing in the '048 patent claims require a specially-programmed computer without construing the claims.

### The District Court Failed To Appreciate The Required Exchange System

Fourth, the District Court incorrectly labeled all computer-related steps as "little more than the description of a complete transaction…" and that "Plaintiff's computerized implementation adds nothing of significance to the abstract idea underneath." [A4, 2-3, 19-20]. In examining if the addition of a machine is considered extra-solution activity, courts look to whether the claimed method can

be performed entirely in the human mind or with a pen and paper – like solving a mathematical equation – or whether the claimed method actually requires a machine to function properly. *See Prometheus Laboratories*, *Inc. v. Mayo Collaborative Services* , 2010 U.S. App. LEXIS 25956 at \*\*29-30 (Fed. Cir. 2010); *see also SiRF Technology*, *Inc. v. International Trade Com'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). In *Gottschalk v. Benson*, the Supreme Court held that a claimed method for converting binary coded decimal numerals into pure binary numerals was not patentable even though the claimed method was tied to a general purpose computer. 409 U.S. 63, 64 (1972). The *Gottschalk* holding rested on the express finding that the claimed mathematics could be performed without a computer. *Id.* at 67. Additionally, the Supreme Court found that the *Gottschalk* method was not limited to any particular art or technology, to any particular apparatus or machinery, or to any particular end use. *Id.* at 64, 66. In contrast, where the machine plays "a significant part in permitting the claimed method to be performed" and the claimed method "cannot be performed" without a machine, the claims are patentable. *See SiRF Tech.*, 601 F.3d at 1333.

Applying the correct legal standard, the Asserted Claims are categorically patent eligible because, as properly construed, the method of the Asserted Claims *cannot* be performed without a specially-programmed computer. [A155, ¶¶ 12, 16, 17]. There is simply no way to "mentally" validate a gift card by determining if

the gift card number is *actually* valid and confirm the amount electronically associated with the proffered gift card.  [A151, ¶ 9, A155, ¶ 15].  A ledger is no reliable substitute for querying the actual electronic record and is subject to human error and fraud.  *Id.*  Indeed, it is the elimination of human error and fraud that is addressed in the Asserted Claims.  [A152-53, ¶¶ 11, 12, A155, ¶ 18].

Similarly, there is also no way of "mentally" releasing funds associated with the gift card or "mentally" issuing a second gift card – these steps require a computer platform connected to a network, programmed in a particular manner to validate the actual gift card account and the amount, transfer the verified amount of funds associated with the gift card, and issue a second gift card.  [A151, ¶ 9, A152-53, ¶ 12, A155, ¶ 15].  These steps, all set forth in the claims of the '048 patent, have nothing to do with mathematical computations.  Nor do they entirely preempt virtually all uses of an underlying abstract idea.

Thus, the use of specially-programmed computer system for gift card exchange, networked with consumers and gift card account record holders through the Internet is not meaningless or "nothing of significance" – it is the essential system that enables the invention of the Asserted Claims to function.

Each of the four critical errors detailed above individually compels reversal – all four compounded together is a travesty.

## B.    The '048 Patent Does Not Claim An Abstract Idea

Regardless of whether the Asserted Claims satisfy the "machine" test, which they do, the District Court erred because the claims do not fall within any of the Supreme Court's recognized exceptions to the broad statement of patent-eligible subject matter in 35 U.S.C. § 101.  There is no dispute that the Asserted Claims do not fall within the exceptions for laws of nature or physical phenomena.  Rather, the District Court based its decision entirely on the "abstract idea" exception.  [A2-6].

Under the "abstract idea" exception, the District Court's decision cannot stand in light of this Court's recent decision in *Ultramercial, Inc.*, *et al. v. Hulu, LLC*, 2013 U.S. App. LEXIS 12715 (Fed. Cir. June 21, 2013).  The *Ultramercial* decision confirms that an "abstract idea" is exactly that:  "an idea itself, rather than an application of that idea."  *Id.* at *26.  Whether the Asserted Claims are to an abstract idea must be determined by the claims themselves, considered as a whole, not the perceived "basic character of the claimed subject matter" – as the District Court incorrectly considered. [A5, 27-28].  The Asserted Claims plainly do not purport to cover the idea of gift card sales or exchange itself.  Instead, they recite concrete and tangible steps to conduct an application of the idea – a specific application, a validated, remote gift card exchange using a networked and specially-programmed computerized gift card exchange system.  These steps are

not general principles or ideas; they recite tangible, patent-eligible processes within the scope of § 101.

### 1.    The Asserted Claims Recite Functional And Palpable Processes In The Field Of Computer Technology

In *Ultramercial*, this Court, like the Supreme Court, declined to provide a precise formula or definition for the abstract concept of abstractness. 2013 U.S. App. LEXIS 12715 at *19. At the same time, the *Ultramercial* decision recognized that a patent-ineligible abstract idea must exhibit itself so clearly and convincingly that "the only plausible reading of the claims is that, by clear and convincing evidence, they cover ineligible subject matter." *Id.* *9. And must be "'so manifestly abstract as to override the statutory language of *section* 101.'" *Id.* *46 (quoting *Research Corp.*, 627 F.3d at 869). In *Research Corporation*, this Court confirmed that "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." 627 F.3d at 868-69. In upholding the patent eligibility of the claimed methods for halftoning gray scale images, the *Research Corporation* Court found that an invention presenting "functional and palpable applications in the field of computer technology" is not impermissibly abstract. *Id.* In upholding the patent eligibility of the claimed methods for collecting revenue from the distribution of media products over the

Internet, the *Ultramercial* Court found that "controlled interaction with a consumer over an Internet website" was "something far removed from *purely* mental steps."

The Asserted Claims of the '048 patent claim ***both***: (1) a functional and palpable application in the field of computer technology (i.e., validated gift card exchange); and (2) a controlled interaction with a consumer over an Internet website – or "through DTMF tones, through an ATM machine [kiosk], or other information exchange mechanism." [A31, 3:50-53].

As in *Research Corporation*, the Asserted Claims of the '048 patent "do not seek to patent a mathematical formula." 627 F.3d at 868. Instead, the particular steps set forth in the claims require the use of computer technology and communications network to (1) provide data associated with the first gift card; (2) validate the data associated with the gift card; (3) select a money rebate or a second gift card; (4) exchange the first gift card for either a money rebate or a second gift card; (5) issue a second gift card; and (6) release funds associated with the first gift card. There is nothing "abstract" in any of these steps, which alone easily suffice for patent eligibility.

Furthermore, implementing these steps provides specific improvements to online gift card exchange technology. In particular, gift exchange companies that implement the claimed steps vastly reduce the potential for fraud in gift card exchange and increase the flexibility in providing a second gift card through

*issuing* the second gift card.  [A152-53, ¶¶ 11, 12, A155, ¶ 18].  Thus, it is *at least*

plausible that the claims are to patent-eligible subject matter and not "manifestly"

outside the scope of patent-eligible subject matter.

Rather than analyze the particular steps recited in the claims, the District

Court erroneously considered abstractness by looking at the "basic character of the

claimed subject matter," which it simplistically characterized as "an in-kind

exchange of chattel" or "a gift card sale or exchange."  [A3-4].  Even had the

District Court accurately characterized fully the "core" of the invention, "[i]n

determining the eligibility of [the] claimed process for patent protection under

§ 101, [the] claims must be considered *as a whole*.  It is inappropriate to dissect the

claims into old and new elements and then to ignore the presence of the old

elements in the analysis….A court cannot go hunting for abstractions by ignoring

the concrete, palpable, tangible limitations of the invention the patentee actually

claims."  *Ultramercial*, 2013 U.S. App. LEXIS 12715 at *21-*23.  By not

analyzing abstractness in the context of the entirety of the claim language, properly

construed in light of the specification, the District Court applied a flawed approach

and reasoning, leading to an incorrect conclusion.

The particular steps recited in the Asserted Claims in no way seek to

preempt the entire field of gift card sales or exchange, or even online gift card

exchange.  Each claim contains many limitations that precisely state particular

steps that must be performed to fall within the scope of the patent.  Contrary to the

District Court's conclusion, these limitations do not "add[] nothing" and are not

"an entirely routine use of a computer." [A4, 2-3, 7-8].  Rather, each step provides

a meaningful and necessary restriction to the scope of the claimed invention that is

performed through a specially-programmed exchange system – "leaving the

invention patent eligible."  *See*, *Ultramercial*, 2013 U.S. App. LEXIS 12715 at

*36.

### 2.    Under Each *CLS Bank* Analysis, The Asserted Claims Are Patentable Subject Matter Under § 101

Chief Judge Rader's Opinion

Consistent with *Ultramercial*, the rule proposed by Judge Rader can be

summed up as follows: "where the claim is tied to a computer in such a way that

the computer plays a meaningful role in the performance of the claimed invention,

and the claim does not pre-empt virtually all uses of an underlying abstract idea,

the claim is patent eligible."  *CLS Bank International v. Alice Corp.*, 717 F.3d

1269, 2013 U.S. App. LEXIS 9493, *94 (Fed. Cir. May 10, 2013).  As shown

above, the computerized gift card exchange system is intimately involved in nearly

every step in the exchange process and is essential to the performance of the

claimed gift card exchange.

According to Judge Rader's opinion, "any analysis of subject matter

eligibility…must begin by acknowledging that any new and useful process,

machine, composition of matter, or manufacture, or any improvement thereof, is eligible for patent protection. While a claim may not later meet the rigorous conditions of patentability, Section 101 makes these broad categories of claimed subject matter eligible for that consideration." *Id.* at *78.

According to Judge Rader, the eligibility inquiry under § 101 is not an inquiry into obviousness, novelty, enablement, or any other patent law concept, and patentability should not be conflated with inquiries into patent eligibility. *Id.* at *94. As with the *Ultramercial* analysis, Judge Rader emphasizes that a "court must consider the asserted claim *as a whole* when assessing eligibility" by considering the "*actual* language of each claim," not by stripping down, simplifying, generalizing, or paraphrasing a claim to "remove all of its concrete limitations…." *Id.* at *80-81. Clearly, this was not the approach of the District Court, which did not focus on the claim language but on its read of the general concept of the '048 patent.

Judge Rader explains that the "true" inquiry under the abstract ideas exception is "whether the claim contains limitations that meaningfully tie that idea to a concrete reality or actual application of that idea." *Id.* at *85. The asserted claims do exactly that, the validated exchange of one gift card for either money or a newly issued gift card.

Judge Rader provides the following guidance for identifying "the line between claims that are and are not meaningfully limited":

[1]     "[A] claim is not meaningfully limited if it merely describes an abstract idea or simply adds 'apply it.'"

[2]     "[I]f a claim covers all practical applications of an abstract idea, it is not meaningfully limited."

[3]     "Even if a claim does not wholly pre-empt an abstract idea, it still will not be limited meaningfully if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment."

[4]     "[A] claim is not meaningfully limited if its purported limitations provide no real direction, cover all possible ways to achieve the provided result, or are overly-generalized."

*Id.* at *86-87.

There is no dispute that the claims wholly pre-empt any abstract idea and the validation of a proffered gift card prior to conducting an exchange according to claim 1 is perhaps the most meaningful activity that could be taken to reduce fraud. The interpretation of validation is clear from the specification:  "the transaction exchange server 140, which accesses the exchange database 150 to determine whether the card brand type is a valid card brand type (that is, whether it is supported, such as a "Borders Bookstore" or "WalMart" card). The transaction exchange server 140 accesses the vendor transaction server 145 to verify that a card to be exchanged is individually a valid card, that is, whether it has a valid identification number."  [A30, 2:60-67].

Judge Rader provides some insight into when a claim *is* meaningfully limited:

[1]    "[A] claim is meaningfully limited if it requires a particular machine implementing a process or a particular transformation of matter."

[2]    "A claim also will be limited meaningfully when, in addition to the abstract idea, the claim recites added limitations which are essential to the invention. In those instances, the added limitations do more than recite pre- or post-solution activity, they are central to the solution itself. And in such circumstances, the abstract idea is not wholly pre-empted; it is only preempted when practiced in conjunction with the other necessary elements of the claimed invention."

*Id.* at *90.

Considering the validation step of claim 1, such validation is essential to the claimed invention and requires the use of a networked computerized gift card exchange system to determine whether the proffered gift card is both one that can be exchanged and whether the provided gift card number is a valid card number.

Turning to computer-specific limitations, Judge Rader identifies the key inquiry is "whether the claims tie the otherwise abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something; if so, they likely will be patent eligible, unlike claims directed to *nothing more than the idea* of doing that thing on a computer." *Id.* at *92. The asserted claims of the '048 patent require both a specific way of doing something – namely, a validated gift card exchange – and a specifically networked computerized gift card exchange

system that is capable of validation, issuance, and interfacing with a kiosk or personal computer.  [A154, ¶16 – A155, ¶18].

Under Judge Radar's approach, as with the *Ultramercial* analysis, it is clear that the District Court failed to focus on the claims, failed to appreciate the meaningful limitations of the Asserted Claims limiting the exchange to a validated gift card exchange, and failed to appreciate the intimate integration of a specially-programmed and networked computerized gift card exchange system to practice the Asserted Claims.

## The Plurality Opinion

In the *Ultramercial* concurring opinion Judge Lourie discussed the plurality analysis from *CLS Bank* which follows the Supreme Court's guidance regarding patent eligibility in *Prometheus*, applied to an abstractness analysis of a computer implemented method.

The plurality opinion in *CLS Bank* applied a two-step process, derived from *Prometheus*, for analyzing patent eligibility under § 101.  "First, a court must identify 'whether the claimed invention fits within one of the four statutory classes set out in § 101.'  Second, one must assess whether any of the judicial exceptions to subject-matter eligibility apply, including whether the claims are to patent-ineligible abstract ideas" *Ultramercial*, 2013 U.S. App. LEXIS 12715, at *47-48 (quoting and citing *CLS Bank*, 2013 U.S. App. LEXIS 9493, at *32).

Regarding abstractness, the court must determine whether the claim poses "any risk of preempting an abstract idea." *Id.* at *48. The first step is to determine the fundamental concept that appears to be wrapped up in the claims. As the Federal Circuit recognized, "claim construction may be helpful in this analysis." *Id.* Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether "additional substantive limitations…narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Id.* (citations omitted); *see*, *CLS Bank*, 2013 U.S. App. LEXIS 9493, at *33.

Regarding the Asserted Claims, the claims are to a specific method of gift card sale, which, as a process, "falls within a category of patent-eligible subject matter." *Ultramercial*, 2013 U.S. App. LEXIS 12715, at *49. The District Court and Appellee Plastic Jungle identified "exchange of chattel" – and the more specific "abstract idea of a gift card sale or exchange." [A3-4].

As in *Ultramerical*, the Asserted Claims of the '048 patent also require more than just that abstract idea as part of the claimed method. The additional claim limitations, such as validating the gift card and issuing a second gift card, "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Ultramercial*, 2013 U.S. App. LEXIS 12715, at *49*; CLS Bank*, 2013 U.S. App. LEXIS 9493, at *33.

The added limitations are far more than mere exchange of chattel or even gift card sale or exchange. Significantly, fraud is addressed by validating the gift card before conducting an exchange and, where exchanged for a gift card – the gift card is *issued* (e.g., newly created with a value), not merely swapped manually for a pre-existing second gift card. [A154, ¶ 16 – A155, ¶ 18]. This certainly does not pre-empt the broad concept of exchange of chattel as found by the District Court or even the more narrowed gift card exchange or gift card sales. Thus, under the *CLS Bank* plurality analysis, applying *Prometheus* – the district court erred in dismissing Cardpool's Asserted Claims for lack of subject matter eligibility under § 101 due to abstractness.

<u>Judge Linn Opinion</u>

Judge Linn's opinion noted that because of the procedural stage of the case, the parties and the trial court agreed that the claims should be construed in Alice's favor and that the method and medium claims required a computer. *CLS Bank*, 2013 U.S. App. LEXIS 9493, at *162-164. Therefore the Linn Opinion would have found all the claims to be patent eligible. *Id.* at *179. The present case is at an earlier stage than the CLS case, which was decided on summary judgment, where the present case was decided on a motion to dismiss for failure to state a claim. The district court declined to construe the claims at all, stating it was unnecessary to do so. Following Judge Linn's opinion, the lower court decision should be

reversed because the claims require construction.  Assuming the lower court followed the summary judgment approach of the CLS district court,  Cardpool shows that the asserted claims require a specially-programmed and networked computerized gift card exchange system to perform the methods of the Asserted Claims.  Expert opinion concurs with Cardpool's claim construction.  Following Judge Linn's opinion, the asserted claims would assume the construction alleged by Cardpool and the expert opinion and found patent eligible under 35 U.S.C. § 101.

Judge Newman Opinion

In her CLS dissent, Judge Newman wrote that the court should give up any attempt to provide a definition of abstraction and instead should hold that "when the subject matter is within the statutory classes in section 101" – process, machine, manufacture or composition of matter – "eligibility is established." *CLS Bank*, 2013 U.S. App. LEXIS 9493, at *157.  Obviously, according to Judge Newman's approach, the asserted claims are to a process and eligibility is thereby established.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Applying *Ultramercial*, the *CLS Bank* opinions, and *Prometheus*, it is clear that the Asserted Claims, as properly construed, require a specially-programmed and networked computerized gift card exchange system satisfies the machine or

transformation test *and* is far from an abstract idea.  Moreover, the claimed method of validated gift card exchange does not pre-empt the entire field of exchange of chattel or gift cards and instead is to a specific application of validated gift card exchange process.  Accordingly, the Asserted Claims are patent eligible under § 101 and the District Court should be reversed.

In addition, the District Court erred by failing to analyze each Asserted Claim on a claim-by-claim basis, instead deciding based on a generalized concept while also failing to properly construe each claim and every limitation of each claim.  Accordingly, the District Court should be reversed as being flawed in its approach and analysis.

For the foregoing reasons, Appellants respectfully ask that the District Court's judgment dismissing the First Amended Complaint be reversed.

Dated: July 29, 2013                  Respectfully submitted,

                                      /s/ *Chadwick A. Jackson*
                                      Edward A. Pennington
                                      John P. Moy
                                      Chadwick A. Jackson
                                      SMITH, GAMBRELL & RUSSELL LLP
                                      1055 Thomas Jefferson Street, NW
                                      Suite 400
                                      Washington, DC  20007
                                      Tel: 202-263-4300
                                      Fax: 202-263-4329
                                      epennington@sgrlaw.com
                                      jmoy@sgrlaw.com
                                      cjackson@sgrlaw.com
                                      *Attorneys for Plaintiff-Appellant*
                                          *Cardpool*, Inc.

# ADDENDUM

# TABLE OF CONTENTS

**Addendum Page**

Order Granting Motion to Dismiss of
The Honorable William H. Alsup
     filed January 22, 2013 ........................................................................Add. 1

Judgment
     filed January 22, 2013 ........................................................................Add. 7

U.S. Patent No. 7,494,048 B2
     dated February 24, 2009 ......................................................................Add. 8

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8         FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10 CARDPOOL, INC.,               No. C 12-04182 WHA
11         Plaintiff,
12   v.                  **ORDER GRANTING**
                            **MOTION TO DISMISS**
13 PLASTIC JUNGLE, INC.,
14         Defendant.
15 _____/
16
17                  **INTRODUCTION**
18      In this patent infringement action involving selling and exchanging gift cards, defendant
19 moves to dismiss on the grounds that the patent claims ineligible subject matter. For the reasons

explained below, the motion is **GRANTED**.
20
                   **STATEMENT**
21
     Plaintiff Cardpool, Inc. is a gift-card exchange company in the business of creating a
22
"gift card exchange marketplace where customers can buy, sell, or trade gift cards" (Compl. ¶ 9).
23
Defendant Plastic Jungle, Inc. is in the same business. Plaintiff alleges that defendant has
24
"without Cardpool's permission, made, used, offered to sell, and/or sold . . . services for
25
exchanging unwanted . . . gift cards with a verified minimum balance for cash [or] . . . gift cards
26
of another retailer" (*Id.* ¶ 10).
27
     Plaintiff asserts United States Patent 7,494,048. Claim one of the '048 patent (the only
28
independent claim) purports to cover (col. 4:53–60):

1. A method of exchanging a gift card, comprising:
providing data associated with a first gift card;
validating the data associated with the first gift card;
selecting either a money rebate associated with the first gift card,
    or a second gift card
exchanging the first gift card for either a money rebate or the
    second gift card; and
charging a first service fee for issuing the second gift card.

The patent describes the invention in the specification as (col. 2:15–20):

"a system . . . in which gift card redemption can occur. The
redemption can occur in the form of an exchange of a gift card for
another gift card, or the exchange of a gift card for money. The
gift card transaction typically occurs through an electronic or
optical medium, such as through accessing the internet.

The patent goes on to describe embodiments of the patented invention that integrate a computer in one or more steps of the patent. For example, a consumer could use the internet to input information identifying the gift card, and then receive the rebate in the form of an electric funds transfer (*see* cols. 2:48–3:5).

Defendant moves to dismiss on the grounds that the patent claims an abstract idea, and therefore the subject matter of the patent is ineligible under Section 101. This order agrees. The motion is **GRANTED**.

## ANALYSIS

Under 35 U.S.C. 101, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." Although the scope of Section 101 is broad, there are important exemptions. "Laws of nature, natural phenomena, and abstract ideas are not patentable." This is because "[p]henomena of nature, . . . mental processes, and abstract intellectual concepts . . . are the basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quotation marks omitted).

"An *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)(emphasis in original). "Still, as the [Supreme] Court has also made clear, to transform an unpatentable law of nature into a patent-eligible *application* of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" A patented process that

2

United States District Court

For the Northern District of California

1  applies an abstract idea must also contain other elements — *i.e.* an "inventive concept" —

2  "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

3  the natural law itself.  The prohibition against patenting abstract ideas cannot be circumvented

4  by attempting to limit the use of the formula to a particular technological environment or adding

5  insignificant post-solution activity."  *Mayo*, 132 S. Ct. at 1294 (emphasis in original).

6       This is not a question of prior art.  Put differently, this is not a situation where a method

7  that was once patentable is now unpatentable because the widespread and routine use of

8  computers render it obvious.  From the plain language of claim 1 of the '048 patent, the

9  conclusion is inescapable that the invention merely covers a simple business transaction:  a

10  consumer A with an unwanted gift card provides it to person B, who validates the balance and

11  then either cuts the consumer a check for the value of the card (for a fee), or exchanges it for

12  another gift card (for a fee).  Plaintiff's protest that the patent requires the use of a computer is

13  belied by the complaint, which casts the patented invention in the same broad terms as the claim

14  language (*see, e.g.*, Compl. ¶ 11).  Defendant conducts its business online, but the complaint

15  targets defendant because it — "without plaintiff's permission" — engages in a gift card

16  exchange business *sensu stricto* (*see id.* at ¶¶ 12–13).  Plaintiff is attempting to assert a patent

17  monopoly over the abstract idea of a gift card sale or exchange.  This it cannot do.

18       Let us assume that one or more components of claim 1 requires the use of a computer

19  (three of the dependent claims do reference specific technology:  claims 5, 6, and 11 refer to a

20  "kiosk," a "personal computer," and a "device," respectively).  In turn, we will assume that the

21  patented "invention" is neither entirely abstract, nor an activity that can be accomplished with

22  the use of human memory, a few shekels and a slip of paper.  Under the Supreme Court's

23  holding in *Mayo*, the operative question becomes:  do the patent claims add enough to the

24  abstract ideas of verifying and selling a gift card for value, or exchanging it for another gift card,

25  to allow the method described to qualify as a patent-eligible process that *applies* the abstract

26  ideas.  As in *Mayo*, the answer to this question is no.

27       Merely using a computer to apply an abstract idea is insufficient to create patentable

28  subject matter.  "[T]he prohibition against patenting abstract ideas cannot be circumvented by

United States District Court

For the Northern District of California

1    attempting to limit the use of the formula to a particular technological environment." *Mayo*, 132

2    S. Ct. at 1297 (quotation marks omitted). Plaintiff's computerized implementation adds nothing

3    of significance to the abstract idea underneath. For example, plaintiff contends that the patented

4    invention uses a gift card that is "a physical representation of an electronic account," and that the

5    exchange "can only take place after data electronically associated with the first gift card is

6    validated" (Opp. 9). In other words, a modern computer takes the place of a more humble

7    technology, the ledger; though the tool has changed, the activity is the same. This is an entirely

8    routine use of a computer that "applies" the validation step in the most basic sense of the term,

9    and is exactly the form of technological application the Supreme Court rejected in *Mayo*.

10   "Purely conventional or obvious pre-solution activity is normally not sufficient to transform an

11   unpatentable law of nature into a patent-eligible application of such a law." *Mayo*, 132 S. Ct. at

12   1298.

13        Plaintiff argues at length that each of the other steps in the patent could be implemented

14   with a computer, and that the invention must be viewed as a whole. For example, rather than a

15   physical exchange of coin, a consumer could receive his rebate via electronic funds transfer from

16   a "vendor bank" to a "consumer bank" (*see* col. 2:40–47). This would be just one part of a

17   computer-implemented system whereby the sale or exchange is processed electronically.

18   Nevertheless, the combination of these discrete computerized steps into a single patent claim,

19   when viewed as a whole, adds nothing that is not present in the individual steps. It amounts to

20   little more than the description of a complete transaction — what defendant accurately

21   characterizes as a "millennia old practice of an in-kind exchange of chattel" — plus a computer.

22        For the same reason, the machine-or-transformation test does not save this patent. The

23   machine-or-transformation test weighs in favor concluding that an invention is patentable if "(1)

24   it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a

25   different state or thing" — but it is not dispositive. *Bilski v. Kappos*, 130 S. Ct. 3218, 3225–26

26   (2010). It does not trump the "abstract idea" exclusion to patentability. *See Mayo*, 132 S. Ct. at

27   1303.

28

Add. 4

Plaintiff cites several Federal Circuit decisions in support of its position but then takes the conflicting position that these decisions are in flux because of *CLS Bank International v. Alice Corporation*. *See* No. 2011-1301, Dkt. No. 66 (Fed. Cir. Oct. 9, 2012) (order granting rehearing *en banc*). Plaintiff asserts that in *CLS Bank* the Federal Circuit will determine *en banc* the test the court should apply to determine whether a computer-implemented invention is a patent ineligible "abstract idea." The outcome of *CLS Bank* cannot, of course, change the Supreme Court's reasoning and holdings in *Mayo* on which this order relies. Plaintiff asserts that the outcome of *CLS Bank* will not be moot in light of *Mayo* because the Federal Circuit will apply *Mayo*'s reasoning to computer-implemented inventions. That remains to be seen. Regardless, plaintiff does not explain why *Mayo* does not provide a suitable framework for evaluating the application of an abstract idea in a patent.

Finally, plaintiff argues that dismissal would be premature because claim construction is required before patentability can be determined. Relatedly, plaintiff argued strenuously at oral argument that a dismissal under Rule 12 would be inappropriate and that the Court should wait for summary judgment following claim construction. This order disagrees.

There is no authority for the proposition that a patent may not be deemed ineligible subject matter on a motion to dismiss. To the contrary, the Federal Circuit has addressed this very question on more than one occasion and "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). The Federal Circuit noted, however, "that it will ordinarily be desirable — and often necessary — to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Id*. at 1273–74.

Plaintiff submitted evidentiary materials in connection with its sur-reply on the issue of patentability. This order declines to consider these evidentiary materials given the Rule 12 procedural posture. More basically, these materials are unnecessary. The basic character of the claimed subject matter is readily ascertainable from the face of the patent.

Claim construction is not necessary.  Even assuming, *arguendo*, that every step in the patent were implemented with a computer, or the magic of the internet, the invention is unpatentable.  Plaintiff's attempt to 'inextricably intertwine' the claim terms with computerized application is unavailing.  "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."  *Mayo*, 132 S. Ct. at 1300.

### CONCLUSION

Defendant's motion to dismiss is **GRANTED**.  Plaintiff's motion to strike defendant's objections to plaintiff's sur-reply is **DENIED AS MOOT** because defendant's objections were not considered for this order.  Judgment will be entered for defendant.

**IT IS SO ORDERED.**

Dated:   January 22, 2013.

                                  WILLIAM ALSUP
                                  UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

6

Add. 6

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARDPOOL, INC.,

        Plaintiff,

  v.

PLASTIC JUNGLE, INC.,

        Defendant.

No. C 12-04182 WHA

**JUDGMENT**

     For the reasons stated in the accompanying order granting defendant's motion to dismiss, **FINAL JUDGMENT IS HEREBY ENTERED** in favor of defendant and against plaintiff. The Clerk **SHALL CLOSE THE FILE**.

     **IT IS SO ORDERED.**

Dated:  January 22, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE



US007494048B2

(12) **United States Patent**     (10) **Patent No.:**    **US 7,494,048 B2**
Gusler et al.                 (45) **Date of Patent:**     **Feb. 24, 2009**

(54) **SYSTEM AND METHOD FOR BRAND NAME GIFT CARD EXCHANGE**

(75) Inventors: **Carl Phillip Gusler**, Austin, TX (US); **Rick Allen Hamilton**, Charlottesville, VA (US); **Steven Jay Lipton**, Flower Mound, TX (US); **Timothy Moffett Waters**, Hiram, GA (US)

(73) Assignee: **International Business Machines Corporation**, Armonk, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 729 days.

(21) Appl. No.: **10/821,134**

(22) Filed: **Apr. 8, 2004**

(65) **Prior Publication Data**

US 2005/0228717 A1     Oct. 13, 2005

(51) **Int. Cl.**
*G07F 19/00*     (2006.01)

(52) **U.S. Cl.** ...................................... **235/379**
(58) **Field of Classification Search** ................. 235/379
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2006/0037835 A1*   2/2006   Doran et al. ................. 194/302
2007/0005685 A1*   1/2007   Chau et al. ................. 709/203

* cited by examiner

*Primary Examiner*—Karl D. Frech
(74) *Attorney, Agent, or Firm*—Carr LLP; D'Ann N. Rifai

(57) **ABSTRACT**

The present invention provides for exchanging a gift card. Data associated with a first gift card is provided. The data associated with the first gift card is validated. Either a money rebate associated with the first gift card, or a second gift card is selected. The first gift card is exchanged for either a money rebate or the second gift card. An exchange fee is generated by both the vendor associated with the gift card and the company performing the exchange.

11 Claims, 3 Drawing Sheets



Case 1:12-cv-00716-CMH-TCB   Document 1-1   Filed 07/05/12   Page 3 of 8 PageID# 9



*Fig. 1*



**FIG. 2A**

Case 1:12-cv-00716-CM-TCB Document 27-1 Filed 07/05/12 Page 70 of 76 PageID# 11



*FIG. 2B*

Add. 11

US 7,494,048 B2

1

# SYSTEM AND METHOD FOR BRAND NAME GIFT CARD EXCHANGE

## TECHNICAL FIELD

The present invention relates generally to electronic commerce and, more particularly, to the exchange of gift cards.

## BACKGROUND

Many consumers have received gift cards, also known as gift certificates, from different stores, especially franchises, for Christmas, birthdays, anniversaries, and so forth. Sometimes these gift cards are welcome, and sometimes they are for stores and shopping boutiques that the recipient/consumer does not wish to frequent. In many instances, these gift cards tend to "burn a hole" in the pocket of the consumer, as the consumer looks for a way to use the card, whether or not the consumer needs or desires anything from those particular stores. Furthermore, if these cards are redeemed for cash, they are typically redeemed at the store of the card issuer, necessitating an unwanted trip by the consumer.

Therefore, there is a need to exchange or redeem gift cards in a manner that addresses at least some of the problems associated with conventional gift card redemptions or exchanges.

## SUMMARY OF THE INVENTION

The present invention provides for exchanging a gift card. Data associated with a first gift card is provided. The data associated with the first gift card is validated. Either a money rebate associated with the first gift card, or a second gift card is selected. The first gift card is exchanged for either a money rebate or the second gift card.

## BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the present invention, and the advantages thereof, reference is now made to the following Detailed Description taken in conjunction with the accompanying drawings, in which:

FIG. 1 schematically depicts a system for electronically exchanging or redeeming gift cards; and

FIGS. 2A and 2B illustrate a method for electronically exchanging or redeeming gift cards.

## DETAILED DESCRIPTION

In the following discussion, numerous specific details are set forth to provide a thorough understanding of the present invention. However, those skilled in the art will appreciate that the present invention may be practiced without such specific details. In other instances, well-known elements have been illustrated in schematic or block diagram form in order not to obscure the present invention in unnecessary detail. Additionally, for the most part, details concerning network communications, electro-magnetic signaling techniques, and the like, have been omitted inasmuch as such details are not considered necessary to obtain a complete understanding of the present invention, and are considered to be within the understanding of persons of ordinary skill in the relevant art.

In the remainder of this description, a processing unit (PU) may be a sole processor of computations in a device. In such a situation, the PU is typically referred to as an MPU (main processing unit). The processing unit may also be one of many processing units that share the computational load

2

according to some methodology or algorithm developed for a given computational device. For the remainder of this description, all references to processors shall use the term MPU whether the MPU is the sole computational element in the device or whether the MPU is sharing the computational element with other MPUs, unless otherwise indicated.

It is further noted that, unless indicated otherwise, all functions described herein may be performed in either hardware or software, or some combination thereof. In a preferred embodiment, however, the functions are performed by a processor, such as a computer or an electronic data processor, in accordance with code, such as computer program code, software, and/or integrated circuits that are coded to perform such functions, unless indicated otherwise.

Turning to FIG. 1, disclosed a system 100 in which gift card redemption can occur. The redemption can occur in the form of an exchange of a gift card for another gift card, or the exchange of a gift card for money. The gift card transaction typically occurs through an electronic or optical medium, such as through accessing the Internet, DTMF telephone signals, information entered into an ATM, and so on. In a further embodiment, the gift card for one store can be exchanged for the gift card of another store. This also typically occurs through an electronic medium, such as through accessing the Internet, DTMF telephone signals, information entered into an ATM, and so on.

The system 100 generally incorporates "business to business" (B2B) and "business to consumer" (B2C) technologies to provide the business participants of the B2B with new marketing opportunities, and provides consumers with new customer satisfaction services. Generally, the B2B exchange will either instigate the partial refund of a gift card, for a fee, or the B2B exchange will issue another gift card for a participating vendor, minus a transaction fee.

In the system 100, a plurality of consumer personal computers (PCs) 107 are employed by consumers 114. Alternatively, the consumers 114 can use a phone 105. The PCs are coupled to Internet 115, and the phone 105 is coupled to a voice response unit (VRU) 110. Both the Internet 115 and the VRU 110 are coupled to a consumer transaction server (CTS) 120. The transaction exchange server (TES) 140 is coupled to a vendor transaction server (VTS) 145, an exchange database 150, and Federal Reserve Electronic Funds Transfer (EFT) 165. The Internet 115 is further coupled to a plurality of vendor servers. The exchange database 150 is coupled to a data mining and query system 170. The federal EFT 165 is coupled to a plurality of consumer banks 175, 180.

The system 100 can work substantially as follows. The consumer 114 can either phone or interact with the Internet through consumer PC's 107 or through the employment of a Kiosk/ATM machine in a store. The consumer 114 wishes to either exchange the original gift card for another gift card, or have a check issued and mailed or otherwise have a credit issued to his account. The consumer 114 also inputs his or her checking or banking information and/or mailing address, or the name of another gift card brand for which the consumer 114 selects to have the present gift card swapped.

The consumer transaction server 120 receives the consumer's request. The consumer transaction server 120 forwards the request to the transaction exchange server 140, which accesses the exchange database 150 to determine whether the card brand type is a valid card brand type (that is, whether it is supported, such as a "Borders Bookstore" or "WalMart" card). The transaction exchange server 140 accesses the vendor transaction server 145 to verify that a card to be exchanged is individually a valid card, that is, whether it has a valid identification number. If it is valid, the vendor trans-

3

action server **145** releases the equivalent of the value of the card, minus a transaction fee, to the transaction exchange server **140**. The transactional exchange server **140** can either request that the Federal Reserve EFT **165** transfer funds from the vendor banks **180** to the consumer banks **175**. Alternatively, the server **140** can order a printer **125** to issue a check **130** to be sent through the US mail **135** to the consumer. Alternatively, a replacement card **127** can be sent through the US mail **135**.

In the system **100**, the vendor transaction server **145**, when allowing its card to be exchanged or cashed, would typically charge a fee for this, for instance 2% of the face value of the card. Then, the transaction exchange server **140** would charge an additional fee, say 8% of the face gift card amount, to send a check directly to the consumer, or 6% to exchange the original gift card for another gift card. The exchange of cards can happen as described in the following.

The consumer **114** inputs the card to which he or she wishes to exchange, as well as the identification number on the original card. The transaction exchange server **140** gets the release of the credit from the original vendor, as described above. However, the transaction exchange server then authorizes another exchange to another card, minus a transaction fee for the exchange. For instance, a "Borders Book Store" could be exchanged for a "WalMart" card. The original vendor takes its cut, such as 2%, and credits the B2B exchange, such as at the TES **140**, with the remaining amount of cash. The TES **140** then requests that the second vendor authorize a second gift card for its own brand.

In a further embodiment, the exchanges made over the TES **140** could be monitored to aid in the determination of marketing trends. For instance, the exchange database **150** could record information pertinent to each gift card exchange, such as the brand name associated with the issued card, the amount of money of the gift card, the date that the card was issued, the date that the gift card was exchanged, the zip code of the consumer making the exchange, whether money or another gift card was requested in the exchange, and if so, what the brand name the card was switched to, and so on. Then, this information is requested or searched for by the data mining and query system **170** to look for patterns or other pieces of information of merit for use by marketers to determine the buying patterns/exchange patterns of consumers. In the system **100**, this can be performed by the data mining and query system **170**, but other means to perform data mining is within the scope of the present invention.

Turning now to FIGS. **2A** and **2B**, illustrated is a method **200** for exchanging or refunding a gift-card. In step **210**, the consumer decides that an exchange or refund is warranted. In step **220**, the consumer accesses the B2B gift card exchange. This can be through the Internet, through DTMF tones, through an ATM machine, or other information exchange mechanism.

In step **230**, the consumer provides the merchant name on the gift card, and in step **240**, the consumer provides the gift card account number on the gift card. In step **250**, the system **100** queries the consumer as to whether he or she wishes to get cash, or another gift card. If the consumer chooses cash, the gift card account number is checked for validity in step **263**. If the card is found to be not valid in step **271**, then the flow stops in step **295**. If the flow is valid, then credit is transferred from the named merchant to the "B2B Gift Card Exchange" in step **275**, less a service fee originated by the vendor, such as a \$2.00 fee. In step **281**, a check, such as for \$90 is printed for a consumer, or a credit of \$90 is generated for the consumer. The B2B charges a transaction fee for converting the gift credit to a form usable by the consumer is generated, such as

4

\$8.00. In step **290**, the check or credit for the refund is routed through the system. In step **293**, the B2B exchange recognizes an \$8.00 profit for a cash back option. Alternatively, a kiosk is used to either receive gift cards/gift card information, and/or to output a new gift card or the equivalent cash amount. Generally, the consumer provides the information as detailed above to the kiosk, and the kiosk can also issue either the cash, a check, credit a checking or savings account, or an alternative gift card. The method **200** stops in step **295**.

Alternatively, in step **250**, if the consumer chooses an alternative gift card instead of the cash back option, the gift card account number is checked for validity in step **266**. If the card is not valid in step **273**, then the flow stops in step **295**. In the flow is valid, then credit is transferred from the named merchant to the "B2B Gift Card Exchange" in step **277**, less a service fee originated by the vendor, such as a \$2.00 fee. In step **283**, the selected second gift card for \$92.00 is purchased on line, and is mailed or otherwise bestowed upon the consumer. (The B2B takes a service fee of \$6.00, for example). Alternatively, the kiosk is used to either and/or receive gift cards/gift card information, and to output a new gift card or the equivalent cash amount. Generally, the consumer provides the information as detailed above to the kiosk, and the kiosk can also issue either the cash, a check, credit a checking or savings account, or an alternative gift card.

In step **293**, the B2B exchange recognizes a \$6.00 profit for the exchange of gift card option. The method flow **200** stops in step **295**.

It is understood that the present invention can take many forms and embodiments. Accordingly, several variations may be made in the foregoing without departing from the spirit or the scope of the invention. The capabilities outlined herein allow for the possibility of a variety of programming models. This disclosure should not be read as preferring any particular programming model, but is instead directed to the underlying mechanisms on which these programming models can be built.

Having thus described the present invention by reference to certain of its preferred embodiments, it is noted that the embodiments disclosed are illustrative rather than limiting in nature and that a wide range of variations, modifications, changes, and substitutions are contemplated in the foregoing disclosure and, in some instances, some features of the present invention may be employed without a corresponding use of the other features. Many such variations and modifications may be considered desirable by those skilled in the art based upon a review of the foregoing description of preferred embodiments. Accordingly, it is appropriate that the appended claims be construed broadly and in a manner consistent with the scope of the invention.

The invention claimed is:

**1**. A method of exchanging a gift card, comprising:

providing data associated with a first gift card;

validating the data associated with the first gift card;

selecting either a money rebate associated with the first gift card, or a second gift card;

exchanging the first gift card for either a money rebate or the second gift card; and

charging a first service fee for issuing the second gift card.

**2**. The method of claim **1**, wherein providing data further comprises providing a merchant name.

**3**. The method of claim **1**, wherein providing data further comprises providing an account number.

**4**. The method of claim **1**, further comprising charging a second service fee for issuing the money amount.

US 7,494,048 B2

5

**5.** The method of claim **1**, wherein providing the data associated with the gift card occurs with employment of a kiosk.

**6.** The method of claim **1**, wherein providing the data associated with the gift card occurs with employment of a personal computer.

**7.** The method of claim **1**, further comprising releasing funds associated with the first gift card by a vendor.

**8.** The method of claim **7**, further comprising charging a third service fee for releasing funds associated with the first gift card by the vendor.

6

**9.** The method of claim **1**, further comprising issuing the money by mail.

**10.** The method of claim **1**, further comprising correlating the exchange of the gift card with at least one other piece of data.

**11.** The method of claim **10**, wherein the step of correlating consists of at least one of the group of the trade name of the associated second gift card, the time of the exchange, and the type of consumer transaction device.

\* \* \* \* \*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 29th day of July, 2013, I caused this Brief of

Appellant to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

ELIZABETH DAY
eday@feinday .com
MARC BELLOLI
mbelloli@feinday .com
PETER MIKHAIL
pmikhail@feinday.com
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel: 650.618.4360
Fax: 650.618.4368

Andrew F. Pratt
pratt@adduci.com
Adduci, Mastriani & Schaumberg, L.L.P.
1133 Connecticut Avenue, N.W., 12th Floor
Washington, DC 20036
Tel: 202-467-6300
Fax: 202-466-2006

*Counsel for Appellant*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Chadwick A. Jackson
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*9,995*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 29, 2013                    /s/ Chadwick A. Jackson
                                        *Counsel for Appellant*