2013-1227

---

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

CARDPOOL, INC.,

Plaintiff-Appellant,

v

PLASTIC JUNGLE,
INC.,

Defendant-Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
IN CIVIL ACTION NO. 12-4182, JUDGE WILLIAM H.
ALSUP, PRESIDING

---

## CORRECTED BRIEF OF DEFENDANT-APPELLEE
## PLASTIC JUNGLE, INC.

---

M. Elizabeth Day
Marc Belloli
FEINBERG DAY ALBERTI
THOMPSON, LLP
1600 El Camino Real
Suite 280
Menlo Park, CA 94025
(650) 618-4360

Andrew F. Pratt
ADDUCI, MASTRIANI,
& SCHAUMBERG, LLP
1133 Connecticut Ave., NW
12th Floor
Washington, DC 20036
(202) 467-6300

*Attorneys for Plastic Jungle, Inc.*


Date:  September 16, 2013

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Cardpool, Inc.          v. Plastic Jungle, Inc.

No. 2013-1227

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Plastic Jungle, Inc.          certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Plastic Jungle, Inc.

---

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

---

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

---

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Feinberg Day Alberti & Thompson LLP: Elizabeth Day, Marc Belloli, Nickolas Bohl, and Peter Mikhail; Begeson LLP: Melinda M. Morton and Jaideep Venkatesan; Adduci, Mastriani & Schaumberg, LLP: Andrew Pratt; Winston & Strawn LLP: Charles B. Molster III

Sept. 16, 2013
_____
Date

/s/ Andrew Pratt
_____
Signature of counsel

Andrew Pratt
_____
Printed name of counsel

Please Note: All questions must be answered

cc: _____

# <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................. *i*

Table of Authorities ......................................................................... *iv*

Statement of Related Cases ............................................................ *vi*

I.    STATEMENT OF THE ISSUE ...................................................1

II.   STATEMENT OF THE CASE .....................................................1

III.  STATEMENT OF THE FACTS ...................................................2

IV.   SUMMARY OF THE ARGUMENT .............................................5

V.    ARGUMENT.................................................................................9

    A.    Introduction ..........................................................................9

    B.    Legal Standard....................................................................10

        1.    To Be Patent Eligible, a Patent Must Claim an
             Application of an Abstract Idea ................................11

        2.    A Patent-Eligible Claim Includes Meaningful
             Limitations ...............................................................12

        3.    A Claim Cannot Preempt the Entire Field, Even if
             the Claim Is Limited to a Field of Use.....................14

        4.    Use of a Computer Must Be Meaningful to the
             Claim .......................................................................15

    C.    The '048 Patent Claims Only an Abstract Concept ............16

        1.    Because the '048 Patent Is So Clearly Ineligible, It
             Should Be Decided on a Motion to Dismiss.............17

        2.    The '048 Patent Is Not Meaningfully Limited..........19

3.      The '048 Patent Preempts the Entire Field of Gift-
        Card Exchanges for a Fee .........................................................24

D.      The '048 Patent Does Not Meaningfully Claim
        Validating Data...............................................................................26

E.      The '048 Patent Fails the Machine-Or-Transformation
        Test .................................................................................................30

        1.      The Claims Do Not Require Any Special Use of a
                Computer....................................................................................30

        2.      The Specification Does Not Disclose Any Special
                Use of a Computer or Network...................................................32

        3.      Even Assuming the Claims Require the Use of a
                Computer, They Are Still Not Meaningfully
                Limited ......................................................................................38

F.      The '048 Patent Contains No Other Meaningful
        Limitations.....................................................................................43

        1.      A Mere Field-of-Use Limitation Is Not Meaningful ................45

        2.      Cardpool's "Validating" Limitation Is Not
                Meaningful Because It Is a Routine, Broad, Data-
                Gathering Step...........................................................................46

        3.      The '048 Patent Does Not Include Meaningful
                Claims Relating to Computer or Network
                Technology.................................................................................46

        4.      The Dependent Claims Do Not Meaningfully
                Limit the Patent.........................................................................47

G.      The District Court Opinion Was Well Reasoned and
        Correctly Decided...........................................................................49

        1.      The District Court Properly Understood and
                Applied the Machine-Or-Transformation Test .........................49

        2.      The District Court Properly Found That It Was
                Unnecessary to Construe the Claims and

                Alternatively Assumed Cardpool's Proposed
                Constructions ............................................................................51

      3.     The District Court Considered All Claims of the
            '048 Patent ...............................................................................53

      4.     The "Required Exchange System" Leaves Nothing
            to Be Appreciated.....................................................................54

VI.   CONCLUSION..............................................................................................56

# TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
-- F.3d --,  No. 11-1486, 2013 WL 4749919 (Fed. Cir. Sept. 5, 2013)................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................17

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*,
687 F.3d 1266 (Fed. Cir. 2012) ............................................... 11, 18, 45

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007) ................................................................ 17, 41

*Bilski v. Kappos*,
-- U.S. --, 130 S. Ct. 3218 (2010) ............................................... passim

*CLS Bank Int'l v. Alice Corp. Pty*,
717 F.3d 1269 (Fed. Cir. 2013) .................................................. passim

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ................................................. passim

*DealerTrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ................................................. passim

*Diamond v. Diehr*,
450 U.S. 175 (1981) ................................................................ 11, 40, 48

*Enzo Biochem, Inc. v. Applera Corp.*,
599 F.3d 1325 (Fed. Cir. 2010) ...............................................................32

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317, 1323 (Fed. Cir. 2012) ...................................... passim

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ................................................................ 11, 14, 42, 55

*In re Alappat*,
33 F.3d 1526, 1544 (Fed. Cir. 1994) ........................................... 42, 43

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ...............................................................36

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
-- U.S. --, 132 S. Ct. 1289 (2012) ............................................. passim

*Parker v. Flook*,
  437 U.S. 584 (1978) ........................................................ 26, 42, 45, 48

*Research Corporation Technologies, Inc. v. Microsoft Corporation,*
  627 F.3d 859 (Fed. Cir. 2010) ...........................................................40

*Seachange Int'l, Inc. v. C-COR, Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005) .........................................................36

*Ultramercial, Inc. v. Hulu, LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) ............................................... passim

*Virginia Panel Corp. v. MAC Panel Co.*,
  133 F.3d 860 (Fed. Cir. 1997) ...........................................................32

**Statutes**

35 U.S.C. § 101 ............................................................................... 1, 10

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rules 28(a)(4) and 47.5, Plastic Jungle, Inc. certifies that no other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court. Plaintiff-Appellant Cardpool, Inc. has filed a reexamination request for United States Patent No. 7,494,048, which is the subject of the present appeal.

I.     **STATEMENT OF THE ISSUE**

Exceptions to 35 U.S.C. § 101 limit patent eligibility.  Claims for abstract ideas that are not meaningfully limited or claims that practically preempt the abstract idea entirely, even if limited to a particular field of use, are not patent-eligible subject matter.  Did the district court properly dismiss Plaintiff-Appellant Cardpool, Inc.'s patent infringement action when the patent-in-suit claims only the abstract idea of exchanging a gift card for another gift card or for money, where the claims contain no meaningful limitations, are not applied to any particular or concrete use, do not require any specific machine or technology, and entirely preempt the abstract idea of a gift-card exchange?

II.    **STATEMENT OF THE CASE**[1]

On July 5, 2012, Appellant Cardpool, Inc. ("Cardpool") filed the present case against Appellee Plastic Jungle, Inc. ("Plastic Jungle") in the Eastern District of Virginia.  A28.  The only count alleged patent infringement of claims 1-3, 6-7, and 10-11 of U.S. Patent No. 7,494,048 patent ("the '048 patent").  A22.  The case was then transferred to the Northern District of California.  A29.  On November 8, 2012, Cardpool filed an unopposed motion to amend its complaint.  A30.  The amended complaint asserted the same claims of the '048 patent.  A46.

---

[1] Pursuant to Federal Rule of Appellate Practice 28(b), Plastic Jungle has not included a jurisdictional statement or statement of the standard of review because it is satisfied with what Cardpool provided in its brief.

1

On November 30, 2012, Plastic Jungle filed a motion to dismiss. A50. Cardpool opposed the motion. A68. On January 22, 2013, the district court granted the motion to dismiss because "the patent claims an abstract idea, and therefore the subject matter of the patent is ineligible under section 101 [of the Patent Act]." A2. The district court found that:

> the conclusion is inescapable that the invention merely covers a simple business transaction: a consumer A with an unwanted gift card provides it to person B, who validates the balance and then either cuts the consumer a check for the value of the card (for a fee), or exchanges it for another gift card (for a fee).

A3. The district court also found that (1) the claims contained no meaningful limitations and (2) the patent did not require a computer or other technology to practice the claims. A3-A5. No claim construction was necessary as the claim language and the invention were simple. A5. Nevertheless, the court assumed Cardpool's construction that the claims could not be practiced without a computer, but still found that the patent was ineligible. The "entirely routine" use of a computer did not "add enough" to the claims. *Id.* The court entered judgment, and Cardpool filed notice of appeal. A18.

## III.   STATEMENT OF THE FACTS

The sole patent-at-issue, the '048 patent, claims a method for exchanging a first gift card for cash or for a second gift card and charging a fee for this service. The patent is not directed towards preventing fraud nor is the patent directed

2

towards any new technological advance or using technology in some way to improve a gift-card exchange. To the contrary, the patent claims only the abstract idea of a gift-card exchange itself. The Technical Field provides: "The present invention relates generally to electronic commerce and, more particularly, to the exchange of gift cards." A30, '048 patent, col. 1:6-7. The only problems the patentees sought to address were consumers receiving gift cards "for stores and shopping boutiques that the recipient/consumer does not wish to frequent" and having those unwanted cards "burn a hole" in the consumers' pocket. *Id.*, col. 1:15-17. The patentees summarized their invention as follows:

> The present invention provides for exchanging a gift card. Data associated with a first gift card is provided. The data associated with the first gift card is validated. Either a money rebate associated with the first gift card, or a second gift card is selected. The first gift card is exchanged for either a money rebate or a second gift card.

*Id.*, col. 1:28-35.

The specification includes three figures. The first shows a general implementation of an exchange system with a network architecture. A26. The specification confirms that the network itself was not part of the invention, but already known in the art: "details concerning network communications . . . have been omitted inasmuch as such details are not considered necessary to obtain a complete understanding of the present invention, and are considered to be within

the understanding of persons of ordinary skill in the relevant art." A30, col. 1:57-62.  The next two "figures" provide the basic, elementary flow control steps mirroring the claims.  A28, A29.  These steps are not tied to any particular technology.  The three-column "Detailed Description" discusses a preferred embodiment of carrying out the gift card exchange.  A30-A31, 1:48-4:28.  While it discusses technology broadly, it too contains no details of any specific technology or specific method that uses technology to carry out the abstract concept.  In fact, the patentees make clear that no particular programming model is necessary to carry out the invention:  "This disclosure should not be read as preferring any particular programming model."  A31, col. 4:33-37.  Similarly, no particular program or computer is preferred anywhere in the specification, or even discussed.

The claims are directed only towards the basic idea of exchanging gift cards for a fee.  The limitations recite broad, routine steps necessary to *any* exchange of two gift cards.  Claim 1—the sole independent claim—reads:

> 1.  A method of exchanging a gift card, comprising:
>
> [1] providing data associated with a first gift card;
> [2] validating the data associated with the first gift card;
> [3] selecting either a money rebate associated with the first gift card, or a second gift card;
> [4] exchanging the first gift card for either a money rebate or the second gift card; and
> [5] charging a first service fee for issuing the second gift card.

A31, col. 4:52-61.

4

Cardpool also asserts dependent claims 2-3, 6-7, and 10-11.  Claims 2 and 3 require providing certain data associated with the gift card:  the merchant name (claim 2) or the account number (claim 3).  A31, col. 4:62-65.  Claim 6, the only asserted claim that invokes any technology, simply requires that first step of claim 1—providing data—"occurs with the employment of a personal computer."  A32, col. 5:4-6.  Claim 7 recites releasing funds associated with the first gift card.  A32, col. 5:7-8.  Finally, claims 10 and 11 require correlating the exchange of the first gift card with specific types of data.  A32, col. 6:3-9.[2]

## IV.    SUMMARY OF THE ARGUMENT

The '048 patent claims the abstract idea of exchanging gift cards for a fee. Nothing meaningful or limiting is included in the claims that would otherwise cabin this broad, basic, and abstract concept to a specific application.  No specific validation technique is claimed, and any computer technology claimed, either explicitly or implicitly, is insignificant to the solution itself.  At most, the claims take the abstract idea of exchanging gift cards and apply it to a computer.  To borrow from the Supreme Court's holding in *Mayo Collaborative Services v.*

---

[2]  Un-asserted claims 4, 5, 8, and 9 are also invalid for the same reasons. Claims 4 and 8 merely add the limitation of charging a second and a third service fee for the acts of issuing the money rebate and releasing funds associated with the first gift card from the vendor.  Claim 9 merely adds the limitation of issuing the money rebate "by mail."  Claim 5 is the same as asserted claim 6 but uses the word "kiosk" instead of "personal computer."  A31-A32.

*Prometheus Laboratories, Inc.*, -- U.S. --, 132 S. Ct. 1289 (2012), the '048 patent claims do not contain enough "other elements or combination elements . . . sufficient to ensure that the patent in practice amounts to significantly more" than a patent on the abstract concept itself. *See id.* at 1294.

Claim 1 can be practiced without regard to any specific application or particular technology. Two people with a nominal amount of money may practice claim 1 with or without computers. Anyone with an unwanted gift card practices the patent anytime she trades one card for another or for money and is charged a fee. All of the limitations in claim 1 and the dependent claims are well-understood, routine, conventional activity.

Cardpool ignores the substance of the district court's reasoning, and makes four arguments on appeal. First, it argues that the patent is about fraud, and validating data presents a meaningful limitation. This is not so. The claimed steps are routine. Every transaction will inherently require some basic validation and that is all that is claimed and described in patent. Moreover, providing and validating data are mere "data-gathering steps" that are not meaningful. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011). Finally, the limitations concerning validation are so broad they provide no direction. Devoid of meaningful guidance, they claim any validating method, which is as abstract as the gift-card exchange itself.

6

Second, Cardpool argues the '048 patent cannot be practiced without the use of a specially programmed computer and thus the machine-or-transformation test saves the patent from ineligibility. This argument, which is also made repeatedly throughout Cardpool's brief, is wrong for a myriad of reasons. Other than claim 6, the plain language of the claims does not require any use of technology. And the presence of "technology" in claim 6 confirms the absence of technology in the other asserted claims. Section 101 requires the Court to look at the "actual language of each claim." *CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1298 (Fed. Cir. 2013) (J. Rader opinion). Even assuming Cardpool were correct regarding the use of a computer or network, it would be incidental to the claim itself. No specialized computer is claimed or disclosed and merely practicing an abstract idea on a computer is not a meaningful use of technology. *CyberSource*, 654 F.3d at 1373-75 ("[T]he incidental use of a computer to perform [an abstract concept] does not impose a sufficiently meaningful limit on the claim's scope.").

Third, Cardpool argues that even if a specially programmed computer is unnecessary, the claims contain other meaningful limitations, such as limiting the exchange to gift cards, providing and validating data, and using a network and computer. None of these limitations are meaningful. Simply restricting an abstract concept to a field-of-use does not make limitations meaningful or allay preemption concerns. *Bilski v. Kappos*, -- U.S. --, 130 S. Ct. 3218 (2010) ("[L]imiting an

7

abstract idea to one field of use . . . [does] not make the concept patentable."). The remaining steps of validating and using technology are not meaningful as summarized above and explained in detail below.

Last, Cardpool argues that the district court incorrectly applied the law and did not consider the machine-or-transformation test, engage in claim construction, fully consider the claims, or fully appreciate the invention. Each of these arguments is without a legitimate basis. The district court specifically found that the '048 patent did not meaningfully use any computer or network technology as part of the solution or invention itself and thus, it necessarily failed the machine-or-transformation test. A3. The district court also explained that it was able to understand the claims, which do not contain any terms of art, without construction. A5. It is clear from the plain claim language and the three-column description that the claims are not limited to a computer implementation. Nevertheless, the district court accepted Cardpool's premise that the claims required computer implementation and found such construction did not save the '048 patent because any such computer use was not meaningful to the claims themselves. A5-A6. Third, even though the district court did not engage in an explicit claim-by-claim analysis, the court explained that it considered the claims as a whole and the various limitations of the claims added nothing to the abstract idea of a gift card exchange. A4. Even without a claim-by-claim explanation, it is abundantly clear

8

that no claims meaningfully limit the patent to something patent-eligible.  Finally, the court fully appreciated what little there is to appreciate of this "invention"—an abstract idea of exchanging one gift card for another gift card or cash, minus a fee. The district court analyzed the sparse specification and the broad claims, and correctly found that the '048 patent is not directed to eligible subject matter.  A3-A5.

Because each of Cardpool's arguments on appeal fail, Plastic Jungle respectfully requests that the Court affirm the district court and find that the '048 patent is not patent-eligible because it claims an abstract idea.

## V.    <u>ARGUMENT</u>

### A.    <u>Introduction</u>

> The present invention provides ***for exchanging a gift card***. Data associated with a first gift card is provided. The data associated with the first gift card is validated. Either a money rebate associated with the first gift card, or a second gift card is selected. The first gift card is exchanged for either a money rebate or the second gift card.

A30, col 1:30-35 (emphasis added).  That is the patentees' summary of the invention in its entirety.  The patent is only about the abstract idea of exchanging gift cards.  The patent is not about preventing fraud or some new way of conducting commerce on a computer or over a network.  There is no meaningful or specific method of validating the data.  There is no meaningful use of a computer,

a network, or other technology.  Undoubtedly, section 101 has emerged as a thorny, at times difficult, area of patent law to apply.  This is not such a time.  This "invention" is the quintessence of abstract—it is disassociated from any practical, concrete application and necessarily preempts the entire field of exchanging gift cards for a fee.

### B.    <u>Legal Standard</u>

A patent must be directed towards eligible subject matter.  Section 101 defines the four categories of patentable subject matter:  "process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  This statutory grant of patentability is broad in its scope.  *Ultramercial, Inc. v. Hulu*, *LLC*, 722 F.3d 1335, 1340 (Fed. Cir. 2013).  Nevertheless, the Supreme Court and the Federal Circuit have recognized three categories of ineligible subject matter:  laws of nature, physical phenomena, and abstract ideas.  *Bilski*, 130 S. Ct. at 3225.  At issue here is whether the '048 patent claims an abstract idea.

An abstract idea is "one that has no reference to material objects or specific examples—i.e., it is not concrete."  *CLS Bank*, 717 F.3d at 1299 (J. Rader opinion).  Recent decisions from this Court and the Supreme Court discuss at length how to distinguish patent eligible processes, machines, and articles of manufacture from unpatentable "abstract ideas."  *Ultramercial*, 722 F.3d at 1342-45.  The following principles or "guideposts" emerge from a review of these cases.

10

### 1.    To Be Patent Eligible, a Patent Must Claim an Application of an Abstract Idea

Every patent, to some extent, claims an abstract concept. But that cannot be *all* that it claims. "[A] claim is not patent eligible only if, instead of claiming an *application* of an abstract idea, the claim is instead *to* the abstract idea itself." *Ultramercial*, 722 F.3d at 1343 (emphasis in original). A patent must claim, in addition to an abstract idea, significant and meaningful limitations that apply the abstract to something real—the concept must be made concrete. *CLS Bank*, 717 F.3d at 1299-1300 ("A claim may be premised on an abstract idea—the question for patent eligibility is whether the claim contains limitations that meaningfully tie that idea to a concrete reality or actual application of that idea.") (J. Rader opinion); *see also Mayo*, 132 S. Ct. at 1301; *Bilski*, 130 S. Ct. at 3231; *Gottschalk v. Benson* 409 U.S. 63, 67 (1972); *Diamond v. Diehr*, 450 U.S. 175, 187 (1981).

This inquiry demands an analysis of the patent claims themselves. The whole claim must be considered; no limitations or aspects of claim language should be ignored. This analysis may require claim construction, but not always. "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). Courts have engaged in extensive section 101 analyses without needing to construe claims where, such as here, the claim language is plain. Alternatively, a court may assume a construction in favor of the patentee and

proceed without formal claim construction.  *Ultramercial*, 722 F.3d at 1349.  The

district court accepted Cardpool's construction as an alternative basis for its

holding.

### 2.    A Patent-Eligible Claim
### Includes Meaningful Limitations

Whether a patent claims an ineligible abstraction or an eligible application is

informed by whether the claim contains meaningful limitations.  "[T]he relevant

inquiry is whether a claim, as a whole, includes *meaningful* limitations restricting it

to an application, rather than merely an abstract idea."  *Ultramercial*, 722 F.3d at

1344 (emphasis in original); *see also Fort Props., Inc. v. Am. Master Lease LLC*,

671 F.3d 1317, 1323 (Fed. Cir. 2012) ("[T]he use of the machine must impose

meaningful limits on the claim's scope.").  The Supreme Court explained this as

whether the claims "do significantly more than simply describe" the concept or

whether the claims "add enough" to confer eligibility.  *See Mayo*, 132 S. Ct. at

1297.  Here the '048 patent claims "simply describe" the abstract idea of

exchanging gift cards.

This Court has provided examples of limitations that are meaningful and

limitations that are not.  A claim limitation is meaningful if it requires "a particular

machine implementing a process or a particular transformation of matter"—

otherwise known as the machine-or-transformation test.  *Ultramercial*, 722 F.3d at

1347 (citing *Bilski,* 130 S. Ct. at 3227). But merely adding a computer will not, by itself, make an abstract idea patent eligible. *Id.* at 1348.

Second, a claim limitation is meaningful if it is "central to the solution itself." *Id.* at 1347. In other words, a meaningful limitation will be intertwined with and part of the solution, *i.e.* the invention itself. Again, it must add something beyond the abstract idea. *See Mayo*, 132 S. Ct. at 1297.

On the other hand, a claim is not meaningfully limited if it recites the abstract concept and "simply adds 'apply it.'" *Ultramercial*, 722 F.3d at 1345-46 (citing *Mayo*, 132 S. Ct. at 1294, 1297). This could be shown when a claim could be said to still cover all "practical applications of an abstract idea." *Id.* Similarly, if the claimed steps "must be taken" when applying the abstract idea, then there is no real difference "from saying apply the abstract idea." *Id.*

Second, limitations are not meaningful if they are merely token or insignificant steps. *Id.* at 1346. Examples of such insignificant activity are "identifying a relevant audience, a category of use, field of use, or technological environment." *Id.*

Third, limitations are not meaningful if they "provide no real direction, cover all possible ways to achieve the provided result, or are overly-generalized." *Id*.

### 3.    A Claim Cannot Preempt the Entire Field, <u>Even if the Claim Is Limited to a Field of Use</u>

Importantly, section 101 seeks to prevent a claim from preempting an abstract concept entirely, removing a basic concept from the public domain. *See Mayo*, 132 S. Ct. at 1301 ("The Court has repeatedly emphasized . . . a concern that patent law not inhibit further discovery by improperly tying up the future use of laws of nature."); *Bilski,* 130 S. Ct. at 3231; *Benson,* 409 U.S. at 72 ("[I]f the judgment below is affirmed, the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself."); *see also CLS Bank*, 717 F.3d at 1280-81 (J. Lourie opinion).

This Court has recently gone to lengths to explain how this concern should be properly understood. *Ultramercial*, 722 F.3d at 1345-46. Preemption is inherent and necessary to the patent system. An inventor is given a monopoly, a right to preempt others from using the invention or discovery, for a limited time in exchange for disclosing the invention. Yet that is precisely why the abstract concept must be meaningfully limited and claimed as an application to a particular use—to ensure that the scope of the preemption is limited so that others are not prevented from accessing fundamental or basic ideas. *Id.* ("Pre-emption is only a subject matter eligibility problem when a claim pre-empts all practical uses of an abstract idea."); *CLS Bank*, 717 F.3d at 1280-81 (J. Lourie opinion). To avoid this concern, "claims ***should not be coextensive with a natural law, natural***

14

*phenomenon, or abstract idea*; a patent-eligible claim must include one or more substantive limitations that, in the words of the Supreme Court, 'add significantly more' to the basic principle, with the result that the claim covers significantly *less*." *CLS Bank*, 717 F.3d at 1281 (J. Lourie opinion) (quoting *Mayo*, 132 S. Ct. at 1294) (first emphasis added, second emphasis in original).

Limiting an invention to a field-of-use will not dispel preemption concerns. "[L]imiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable." *Bilski*, 130 S. Ct. at 3231. It is no better to remove an abstract idea from use for a particular field than it is to remove it from all fields. The same fundamental concerns apply as both instances work to the disadvantage of those seeking to make *any* further discoveries or improvements.

### 4.    <u>Use of a Computer Must Be Meaningful to the Claim</u>

When a patent claim potentially involves computer-related methods, the Court must probe whether the use of computer technology adds something meaningful to the claim. While the machine-or-transformation test is still an "important clue" into whether subject matter is patent eligible, "[t]he mere reference to a general purpose computer will not save a method claim from being deemed too abstract to be patent eligible." *Ultramercial*, 722 F.3d at 1348. A computer will only add meaning if "the claims tie the otherwise abstract idea to a *specific way* of doing

something with a computer, or a *specific computer* for doing something; if so, they likely will be patent eligible, unlike claims directed to *nothing more than the idea* of doing that thing on a computer." *CLS Bank*, 717 F.3d at 1302 (J. Rader opinion) (emphasis in original); *see also Ultramercial*, 722 F.3d at 1348. Again, the Court has provided examples: "meaningful limitations may include the computer being part of the solution, being integral to the performance of the method, or containing an improvement in computer technology." *Ultramercial*, 722 F.3d at 1349 (citing *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010)).

### C.    The '048 Patent Claims Only an Abstract Concept

With these principles in mind, it becomes clear that the '048 patent claims nothing more than the abstract idea of exchanging a gift card for a fee. The patent does not claim, describe, or suggest any new or specific method of validating a gift card, exchanging the card, issuing a new card, or subtracting a fee; it does not claim, describe, or suggest any new or specific computing means or other technology to implement the method—either locally or across a network. One merely gathers data to validate a card and exchanges the card, for a fee. The dependent claims only add insignificant, routine, and necessary activity, such as validating the name of the merchant. A31-32, col. 4:62-col. 6:9. Cardpool should not be permitted to claim a gift-card exchange entirely and prevent all others from making further advances in the field or engaging in any gift-card exchange service.

16

## 1.    Because the '048 Patent Is So Clearly Ineligible,
It Should Be Decided on a Motion to Dismiss

Cardpool argues that there are factual disputes that prevent this case from being decided on a motion to dismiss, mostly focusing on whether claim construction is necessary.  Dismissing a case on section 101 grounds may be an exception, but if there were ever a case to allow for that exception, this is it.  The issues present a simple patent with simple claim language.  No term of art needs unraveling.  The description of the invention is a mere three columns without any discussion of any specific or complicated technology.

This is not a case rife with underlying factual issues.  Besides the broad issue of patent eligibility, the specific issues are whether the patent claims meaningful limitations in terms of validating data and using technology.  Whether these basic limitations are meaningful are questions of law.  To the extent there are any legitimate factual issues, it is still abundantly clear that the patent still only claims an abstract idea even when those issues are construed in Cardpool's favor.  Moreover, Cardpool cannot rely on imagined factual issues, couching legal conclusions as factual issues, or conclusory arguments.  Factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation."); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("But where the well-

17

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (internal citation omitted).

Cardpool maintains that claim construction is necessary before a ruling can be made. That may be the general rule, but not in instances, like here, where the claim language is so basic. *Bancorp Servs.*, 687 F.3d at 1273; *Ultramercial*, 722 F.3d at 1340 (finding that "the subject matter at stake and its eligibility does not require formal claim construction"); *CLS Bank*, 717 F.3d at 1285-56, 1311-1321 (Judge Lourie's and Judge Rader's opinions both found the method claims ineligible under section 101 without requiring formal claim construction, although it was accepted that the transactions "required computer implementation"). The Supreme Court did not require claim construction in *Bilski.* It was evident from the plain language of the claims that the patent was directed towards an abstract idea. *Bilski*, 130 S. Ct. at 3231. So too, in *CyberSource*, this Court was able to determine from "the plain language of claim 3" that the claim did not "require the method to be performed by a particular machine, or even a machine at all." 654 F.3d at 1370. But most importantly, even if the Court adopts Cardpool's position that a computer is necessary to practice each and every limitation of each and every claim, the claims remain ineligible.

This is not a close case.  The only plausible reading of the claims is that, by clear and convincing evidence, they cover the manifestly ineligible abstract idea of exchanging gift cards for a fee.  *See Ultramercial*, 722 F.3d at 1340.  That and nothing more.

## 2.    The '048 Patent Is Not Meaningfully Limited

The claims of the '048 patent are not limited in any meaningful way to an application.  No steps "meaningfully tie" the concept of exchanging gift cards to an "actual application" or "concrete reality."  *See CLS Bank*, 717 F.3d at 1299-1300 (J. Rader opinion), *Ultramercial*, 722 F.3d at 1343 ("An abstract idea is one that has no reference to material objects or specific examples—*i.e.,* it is not concrete."). Without question the claims are exceedingly broad.  Independent claim 1 has five steps:  (1) "providing data," (2) "validating the data," (3) "selecting either a money rebate . . . or a second gift card," (4) "exchanging the first gift card," and (5) "charging a first service fee."  There is nothing concrete to any of these steps—no references to material objects or specific examples.  Rather, these conventional steps are routine, inherent, and provide no real direction as to how to perform the method—all key hallmarks of meaningless limitations.  *Ultramercial*, 722 F.3d at 1346-48; *CLS Bank*, 717 F.3d at 1283, 1311-1312.  Claim 1 does not require any computer, network, or other technology.  No machine is necessary or meaningful to any claim.

The '048 patent is very similar to other patents recently found to be ineligible under section 101 and very different from other patents found to be eligible.  In *Bilski*, the Supreme Court invalidated a patent on section 101 grounds because the broad claims covered the entirety of the abstract concept of hedging. *Bilski*, 130 S. Ct. at 3231.  The claims at issue in *Bilski* recited a series of steps involving transactions between a commodity provider and consumers with "counter-risk" positions.  Here there is only consumer A and person B; there is not even a calculation of something equivalent to a counter-risk position.  There is just gathering and checking data about a gift card, exchanging the card, and charging a fee.  In both instances, the claims, so untethered from anything practical or applied, are coextensive with the basic, fundamental, and abstract concept.  *Id.* (finding that the claims only explained a "basic concept" that was "long prevalent in our system of commerce" and allowing the claims "would effectively grant a monopoly over an abstract idea").

In *CyberSource*, the Federal Circuit considered a patent covering a "method for verifying the validity of a credit card transaction over the Internet" with steps for obtaining information about other credit card transactions, analyzing that data, and using it to validate the transaction.  *CyberSource*, 654 F.3d at 1370.  These limitations approximate some of the limitations at issue here, namely the providing and verifying of data related to a gift card, upon which Cardpool places so much

emphasis. The *CyberSource* Court found these limitations were mere "data-gathering" and could not "make any otherwise nonstatutory claim statutory." *Id.* On a whole, "the claim was drawn to an unpatentable *mental process*—a subcategory of unpatentable abstract ideas." *Id.* at 1371 (emphasis added). But these steps add even less to the '048 patent than the claimed limitations in *CyberSource*. There the steps required obtaining information related to other transactions and the associated Internet addresses, then validating the transaction based on this information. There was at least some modicum of specificity— unlike the unadorned "validating the data" step of the '048 patent. Moreover, the Court did not find the mere use of applying an abstract idea on a computer to be meaningful. *Id.* at 1372, 1375.

In *DealerTrack, Inc. v. Huber,* this Court considered a patent that described "a computer-aided method and system, respectively, for processing credit applications over electronic networks." 674 F.3d 1315, 1317 (Fed. Cir. 2012). The invention "proposed to automate the process [by which car dealers sought loans for their customers] through the use of a 'central processor.'" *Id.* Credit application data was received from dealers, which was processed and conformed to different bank forms, forwarded to banks, and then any answer from the bank was forwarded back to the dealer. *Id.* Comparing the claim to that found ineligible in *Bilski*, the Court held that the claim merely "explain[s] the basic concept of

21

processing information through a clearinghouse, just as claim 1 in *Bilski II* explained the basic concept of hedging." *Id.* at 1333 (internal citations and quotations omitted). The claims were not patent-eligible because they were so general as to "wholly preempt the clearinghouse concept." *Id.* Here there is no processing or manipulating of data; data is merely gathered and checked (*i.e.*, validated) once. Nor did it matter in *DealerTrack* that the patent was computer aided since no computer was meaningful to the claimed invention or that the invention was drawn only to the field of car loans. *Id.* at 1333-34.

In *Fort Properties*, this Court considered a patent that described "an investment tool designed to enable property owners to buy and sell properties without incurring tax liability." 671 F.3d at 1318. The patent disclosed a process to take advantage of a tax exception under federal law. *Id.* The Court found that the patent merely disclosed the "abstract concept" of "an investment tool, particularly a real estate investment tool designed to enable tax-free exchanges of property." *Id.* at 1322. It was immaterial that the claim had ties to the physical world through deeds and contracts. *Id.* The same reasoning applies to the claims here. Both patents claim basic steps of an abstract concept with nothing more significant tying the claims to the real world.

The Court's recent *en banc* decision in *CLS Bank* also supports invalidating this patent. Despite being a fractured court with no majority opinion, seven of the

ten members found the method claims to be ineligible.  *CLS Bank*, 717 F.3d at

1274, n.1.  The claims were directed towards moderating risk by having a third

party gather and track data, and verify transactions.  *Id.* at 1274.  Judge Lourie's

opinion found that the method clams were directed to "a disembodied concept . . .

untethered from any real world application" and the limitations of creating shadow

accounts, using a computer, and reconciling records did not add anything

meaningful.  *Id.* at 1286.[3]  The '048 patent claims also recite a disembodied

concept, untethered to reality.  Moreover, the steps of creating and reconciling

records are the same as providing and gathering data—all are ancillary,

meaningless data gathering.  *Id.*

Finally, this Court's recent decision in *Ultramercial* confirms that abstract

claims, not meaningfully tied to a computer, are ineligible under section 101.

There the claimed invention related to a specific method for transmitting content

and advertising on the Internet.  In particular, it "require[d] intricate and complex

computer programming."  *Ultramercial*, 722 F.3d at 1350.  The claims were a

"specific application" of Internet advertising that necessitated providing and

restricting specific media products.  *Id.*  The claims were not directed to something

broad like "sell[ing] advertising using a computer" but were "far from over

---

[3] Judge Rader's opinion, for which Judge Moore joined, found the method
claims ineligible as they claimed a "general and theoretical concept" with all
additional steps being "inherent."  *Id.* at 1311-1312.

generalized, with eleven separate and specific steps and many limitations and sub-steps in each category." *Id.* at 1351-52.  There, the addition of the computer to the claims was significant because the invention itself involved "advances in computer technology, and it was thus sufficient to qualify the claims for patent eligibility under § 101." *Fort Props.*, 671 F.3d at 1323 (discussing *Ultramercial I*).  Here, there is no specific application of exchanging gift cards.  Moreover, even if the claims are read to include computer technology, the patentees themselves explained that such technology is ancillary.  A30, col. 1:57-62.  No intricate or complex programming is required, claimed, or described.  Here the claims are not at all about "advances in computer technology" as they were in *Ultramercial*.  Rather, the '048 patent claims the simple concept of exchanging a gift card for a fee; an idea more abstract than the ineligible ideas claimed in *Bilski, CyberSource, DealerTrack, Fort Properties,* and *CLS Bank*.[4]

### 3. The '048 Patent Preempts the Entire Field of Gift-Card Exchanges for a Fee

Because the patent is not directed towards a particular method of conducting an exchange or using a particular technology to facilitate the exchange, it covers all

---

[4] This Court recently decided another section 101 case in *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, -- F.3d --,  No. 11-1486, 2013 WL 4749919 (Fed. Cir. Sept. 5, 2013).  The idea claimed in this case is also more abstract than the idea claimed in *Accenture*.

gift card exchanges where a fee is charged.  The patentees made clear that they

intended their invention to be interpreted broadly:

> It is understood that the present invention can take many forms and embodiments. Accordingly, several variations may be made in the foregoing without departing from the spirit or the scope of the invention.
>
>      \*     \*     \*
>
> Having thus described the present invention by reference to certain of its preferred embodiments, it is noted that the embodiments disclosed are illustrative rather than limiting in nature and that a wide range of variations, modifications, changes, and substitutions are contemplated in the foregoing disclosure and, in some instances, some features of the present invention may be employed without a corresponding use of the other features.

A31, col. 4:29-45.[5]  There is nothing in the specification and nothing in the claims

limiting the scope of the patent to something narrower than the abstract concept of

exchanging gift cards.  This is the core of the preemption concern:  "***claims should

not be coextensive*** with a natural law, natural phenomenon, or abstract idea . . .

What matters is whether a claim threatens to subsume the full scope of a

fundamental concept . . . ."  *CLS Bank*, 717 F.3d at 1280-81 (J. Lourie opinion).

---

[5]  Cardpool says "[t]here is no dispute that the claims wholly pre-empt any abstract idea . . . ."  Appellant Br. at 42.  Plastic Jungle agrees that the claims indeed wholly pre-empt the abstract idea, but assumes this to be a typographical error.

That the patent is directed to gift cards is inconsequential. Such "hollow field-of-use limitations" do not add "more." *See Bilski*, 130 S. Ct. at 3230 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant post-solution activity."); *Parker v. Flook*, 437 U.S. 584, 594-95 (1978) (finding a field-of-use limitation insufficiently limiting because "even if the [abstract] solution is for a specific purpose, the claimed method is nonstatutory").

To allow the patent to stand would "effectively grant a monopoly over" the abstract idea of exchanging gift cards for a fee to Cardpool. *See Bilski*, 130 S. Ct. at 3231. Any process that exchanges gift cards—which will necessitate providing and validating some data, providing either another gift card or cash, and charging a fee—will infringe the '048 patent. Thus, any new, eligible improvement to this process, including improving any technology related to it, will be thwarted. The claims of the '048 patent "reach too far and claim too much, on balance obstructing rather than catalyzing innovation." *CLS Bank*, 717 F.3d at 1277.

### D. The '048 Patent Does Not Meaningfully Claim Validating Data

A persistent theme throughout Cardpool's brief is that the '048 patent prevents fraud in a novel way by validating data. *See, e.g.*, Appellant Br. at 3, 5. There is nothing novel or meaningful about this step. Requiring that some data be validated before conducting an exchange is as abstract a concept as exchanging

26

goods. It is a staple, routine step in any commercial transaction. Moreover, this patent is not about preventing fraud. The word "fraud" is nowhere in the disclosure or the claims and nothing in the patent discusses anything even relating to fraud.

Every practical application will have to include some validating, including, at least, reviewing the card name and number as recited by the dependent claims. "When the steps of the claim 'must be taken in order to apply the [abstract idea] in question,' the claim is essentially no different from saying apply the abstract idea." *Ultramercial*, 722 F.3d at 1346 (quoting *Mayo*, 132 S. Ct. at 1299–1300). No rational customer would want a gift card for a made up store or a card that is inauthentic.

Second, these steps only require that the user submit and confirm certain information. That is all. "[M]ere data-gathering steps cannot make an otherwise nonstatutory claim statutory." *CyberSource*, 654 F.3d at 1370 (quoting *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)); *id.* at 1372 ("[E]ven if some physical steps are required to obtain information from the database (e.g., entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability"). In *CyberSource*, the patent-at-issue claimed "verifying the validity of a credit card transaction" through steps such as "obtaining information about other transactions," "constructing a map of credit card numbers," and "utilizing the

27

map" to determine if the transactions are valid. *Id.* at 1370. Similarly, in *CLS Bank*, the patentees had claimed a method that required shadow accounts and obtaining information as to balances and transactions. 717 F.3d at 1287. Judge Lourie's concurrence found these to be "ancillary data-gathering steps" that added "nothing of practical significance to the underlying idea of reducing settlement risk through intermediation." *Id.* Here, the '048 patent recites much broader, more abstract steps such as "providing data" and "validating the data" than the steps claimed in *CyberSource* or *CLS Bank*, which add even less meaning to the abstract idea.

Finally, the step of "validating the data" is so broad it encompasses any and every conceivable means or type of validation. The patentees did not invent some new or better method to validate data. The specification only discusses "validation" at a very high level:

> The consumer transaction server **120** forwards the request to the transaction exchange server **140**, which accesses the exchange database **150** to determine whether the card brand type is a valid card brand type (that is, whether it is supported, such as a "Borders Bookstore" or "WalMart" card).

> \*      \*      \*

> [T]he gift card account number is checked for validity in step **263**. If the card is found to be not valid in step **271**, then the flow stops in step **295**. If the flow is valid, then credit is transferred from the named merchant to the

28

> "B2B Gift Card Exchange" in step **275**, less a service fee
> originated by the vendor, such as a $2.00 fee.

A30, col. 2:59-64; A31, col. 3:59-63.  This only tells the reader to take the card

brand and the card number and determine if it is valid.  If it is not valid, then stop

the transaction.  Something so directionless cannot be a meaningful limitation.

Again turning to *CyberSource*, this Court found that the validation limitation there

was "so broadly worded that it encompasses literally any method for detecting

fraud based on the gathered transaction and Internet address data."  *CyberSource*,

654 F.3d at 1373; *see id.* at 1370 ("Finally, step (c) does not limit claim 3 to any

specific fraud detection formula or mathematical algorithm . . . .").  Claim 1 of the

'048 patent claims as broad a validation step as could be imagined.  It does not

limit the claim to any specific formula, method, or technique.  At least in

*CyberSource*, the patentee had limited the step in ***some way***.  Claim 1 of the '048

patent allows for any form of validation.

Exchanging gift cards will always involve validating or confirming some

data or some fact.  The steps of "providing" and "validating" data do not

meaningfully limit the claim with some particular or integral method of validating.

Incorporating routine steps that are necessary to performing an abstract method

does not make an otherwise ineligible patent claim eligible.

### E.    The '048 Patent Fails the Machine-Or-Transformation Test

Cardpool does not attempt to distinguish *Bilski*, *CyberSource*, *DealerTrack*, or *Fort Properties*.  Instead, it relies primarily on asserting that the patent requires a specially programmed computer.  *See, e.g.,* Appellant Br. at 20.  But Cardpool ignores that with the exception of dependent claim 6 (which only recites the use of a personal computer) ***none*** of the asserted claims recite the use of any specific computer or a specific method using a computer.  Cardpool likewise ignores the specification's failure to disclose any specially programmed computer or network and that the patentees said that no particular computer or network is required. A30, col. 1:57-62.  Even if the Court were to assume that the claims required a computer, the mere use of a computer cannot create patent eligibility where it does not otherwise exist if the technology is not meaningful or significant to the solution itself.  *See Ultramercial*, 722 F.3d at 1348.

### 1.    The Claims Do Not Require Any Special Use of a Computer

It is the "claims [that] are key to this patent eligibility inquiry." *CLS Bank*, 717 F.3d at 1298 (J. Rader opinion).  And in considering the claims, "a court must consider the *actual* language of each claim." *Id.* (emphasis in original) ("Different claims will have different limitations; each must be considered as actually written.").  Without question, the only mention of technology is claim 6's generic

reference to "employment of a personal computer."  The remaining claims are silent as to any other technology.  Thus, the claims do not require any special use of a computer because they do not on their face recite the use of any computer.

In *CyberSource*, this Court rejected the plaintiff's argument that the patent was tied to a "machine" because "the plain language" of the claim "[did] not require the method to be performed by a particular machine, or even a machine at all."  654 F.3d at 1370.  In *Fort Properties*, there were two sets of claims.  Those that did not make any mention of technology and those that did.  The Court found that the first set failed the machine-or-transformation test because the "claims, like the invention in *Bilski*, disclose an investment tool not requiring the use of a computer."  *Fort Props.*, 671 F.3d at 1322; *see also CLS Bank*, 717 F.3d at 1312 ("Finally, we note that the method claims do not mention a computer.").

Where the claim language is so plain, generic, and broad, the Court need not construe any claim to see that there are no limitations directed towards a specific use of computers.  Moreover, the addition of "personal computer" in claim 6 shows that the patentees knew how to claim such technology if they wanted.  Instead, they made a choice to leave the claims broad and disassociated from any concrete application that uses any specific technology.

### 2.    The Specification Does Not Disclose Any Special Use of a Computer or Network

Because there is no claim language to support their argument, the entirety of Cardpool's position that the claims can "only be performed through a specially-programmed computer" is based on a strained reading of the specification. Appellant Br. at 20.  Such an analysis is improper where, as here, the claim language is plain on its face.  This Court has repeatedly said "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010) (internal quotation omitted).  The use of a specific embodiment for illustrative purposes does not impliedly exclude other embodiments.  *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 866 (Fed. Cir. 1997).  There is no indication in the record that the patentees intended to limit the claims to use a specially programmed computer. Rather, the specification is quite explicit that they intended the opposite: "Accordingly, it is appropriate that the appended claims be construed broadly and in a manner consistent with the scope of the invention."  A31, col. 4:48-50.

In any event, the specification contradicts Cardpool's argument that a specially programmed computer is required.  It only describes technology at a very high level and never as part of the invention:

> Accordingly, several variations may be made in the foregoing without departing from the spirit or the scope of the invention. The capabilities outlined herein allow for the possibility of a variety of programming models. ***This disclosure should not be read as preferring any particular programming model***, but is instead directed to the underlying mechanisms on which these programming models can be built.

A31, col. 4:30-37 (emphasis added).  Just as no specific programming model is required, no specific program is required either.  The patent is not about technology, but about the abstract idea of exchanging gift cards.

Nevertheless, Cardpool would have the Court believe the patent devises a very specific technological method to implement an exchange.  Cardpool begins with Figure 2A and says "[n]early every step of the flow diagram must be implemented through a specially-programmed computer."  Appellant Br. at 20. This figure is a simple flow chart that describes the steps of exchanging a gift card and charging a fee.  Just as one can plainly read the patent claims and see there is no mention of a specific computer, one can plainly read Figure 2A and see that none of the steps require any sort of computer, let alone a specially programmed computer.  A28.  Cardpool makes its argument based on adjectives manufactured as part of counsel's argument, not based on the language used in the figure itself. In its brief, Cardpool describes step 220 as a "*computerized* gift card exchange." Appellant Br. at 21 (emphasis added).  Yet what the figure actually says is "Consumer Accesses the Business to Business Gift Card Exchange."  A28, Fig.

2A.  The word "computerized" or "computer" appears neither in step 220 nor anywhere else in Figure 2A.  The specification does not tie the term Business-to-Business Gift Card Exchange to anything specific either:  "The system **100** generally incorporates 'business to business' (B2B) and 'business to consumer' (B2C) technologies to provide the business participants of the B2B with new marketing opportunities, and provides consumers with new customer satisfaction services."  A30, col. 2:27-3:4.  This "general" reference does not give any description or insight as to what these terms mean.  Rather, the specification describes them as ancillary and separate from the invention itself, and not part of any claim.

Business-to-business technologies could mean a brick-and-mortar store as easily as it could mean an online website despite Cardpool's attempt to classify it as "computerized."  The only part of the specification to which Cardpool cites simply says "In step **220**, the consumer accesses the B2B gift card exchange.  This can be through the Internet, through DTMF tones, through an ATM machine, or *other information exchange mechanism*."  A31, col. 3:49-53 (emphasis added).  Again, "other information exchange mechanism" can be anything.  When two people conduct a transaction face to face they are exchanging information.  As another example, Step 250 in Figure 2A asks a simple question "Does Consumer Choose Cash or Alternate Gift Card?"  A28.  This step invokes no technology.  It

34

is a basic choice made by the consumer, which can be relayed by and to a human

or a machine.  The entire flow chart of Figure 2A consists of inherent, abstract

steps that can be performed without any technology whatsoever; the flow chart can

be completed, just as the claims can be practiced between two individuals

conducting a transaction as easily as using a computer.

Cardpool again tries to insert non-existent technology in its analysis of

Figure 2B.  The gift card exchange is also described as "computerized" in

Cardpool's brief, but is general and unspecified as such in the figure, described

only as a B2B Gift Card Exchange.  Each of the steps listed in Figure 2B can be

performed between two people or alternatively by machines.  Cardpool also points

to Figure 1, which shows a networked infrastructure performing an embodiment of

the exchange.  While Cardpool places great reliance on this figure, the patentees

acknowledged that their patent is not about using a particular network

infrastructure or improving such an infrastructure to facilitate gift card exchanges:

> In other instances, well-known elements have been
> illustrated in schematic or block diagram form in order
> not to obscure the present invention in unnecessary
> detail. Additionally, for the most part, ***details concerning
> network communications***, electro-magnetic signaling
> techniques, and the like, ***have been omitted inasmuch as
> such details are not considered necessary to obtain a
> complete understanding of the present invention***, and
> are considered to be ***within the understanding of
> persons of ordinary skill in the relevant art***.

A30, col. 1:54-63 (emphasis added). The network is both incidental to the solution and already in the public domain. Thus, although Cardpool may recite different server names in their brief, none of that technology is integral to the "invention."

Cardpool also argues that the *specification* (not the claims) requires a specific form of data validation. As discussed above, there is no specificity as to what this means or how it is to be achieved beyond a vague, general description and an even broader, directionless claim limitation.

Cardpool next relies on general references in the specification that discuss embodiments using a personal computer, an ATM, or a kiosk. Appellant Br. at 23. But it is inappropriate to read these embodiments into all the claims because the patentees claimed use of such devices in separate, dependent claims. Specifically, claim 6 recites providing data using "a personal computer" and claim 5 recites the same using "a kiosk." A32, col. 5:2-6. Reading these limitations into claim 1, or other claims, would violate the doctrine of claim differentiation. This doctrine stems from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368-1369 (Fed. Cir. 2005). The doctrine is at its strongest "where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). But even if the

36

Court were to read such devices into the other claims, they add no meaning to the solution. *See CyberSource*, 654 F.3d at 1375

Cardpool maintains that "notably absent from the disclosure is any embodiment that does not utilize a networked computer system specifically programmed to conduct a validated gift card exchange."  Appellant Br. at 25.  As discussed above, Cardpool is wrong.  The processes outlined in Figures 2A and 2B can be performed without any technology.  Similarly, the specification repeatedly reminds us that "those skilled in the art will appreciate that the present invention may be practiced without such specific details."  A30, col. 1:52-55; *see also* A31, col. 4:29-30 ("It is understood that the present invention can take ***many forms and embodiments***."); A31, col. 3:51-53 ("This can be through the Internet, DMTF tones, through an ATM machine, or ***other information exchange mechanism*** . . . ."); A31, col. 4:34-45 ("This disclosure should ***not be read as preferring any particular programming model***."); A31, col. 4:39-45 ("[I]t is noted that the embodiments disclosed are ***illustrative rather than limiting*** in nature and that a ***wide range of variations, modifications, changes, and substitutions are contemplated*** . . . some features of the present invention may be employed without a corresponding use of the other features."); A31, col. 4:48-49 ("[I]t is appropriate that the appended claims be ***construed broadly*** . . . .") (emphasis added to each).  In the end, the concern is not whether all embodiments are shown or described, but

whether anything meaningfully limits the claim. What Cardpool should acknowledge as "notably absent" from the '048 patent is anything restricting the invention to a particular application using a network or specially programmed computer.

### 3. Even Assuming the Claims Require the Use of a Computer, They Are Still Not Meaningfully Limited

Even assuming Cardpool is correct that claims cannot be practiced without a computer or network, the patent claims are still ineligible. The use of any computer, network, or other technology to practice the claims is incidental, entirely routine, and insignificant token activity. Just as one cannot take an abstract idea and say, "apply it," one cannot take an abstract idea and say "apply it—with a computer!" Here the claims are directed to "*nothing more than the idea* of doing that thing on a computer." *See Ultramercial*, 722 F.3d at 1348 (emphasis in original). Nothing in the patent suggests "a specific way of doing something with a computer, or a specific computer for doing something." *See id.* Even assuming the process must be carried out on a computer, no technology is integral to the solution, or its performance, and there is nothing whatsoever improving any technology. *See id.* ("[M]eaningful limitations may include the computer being part of the solution, being integral to the performance of the method, or containing an improvement in computer technology.").

Cardpool's argument amounts to nothing more than taking the abstract idea of a gift card exchange and performing it on a computer.[6]  In *CyberSource*, the Court found that "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers."  654 F.3d at 1375 (finding any claimed limitation directed towards using a computer was "incidental" and did "not impose a sufficiently meaningful limit").  There the Internet was "merely described as the source of the data."  *Id.* at 1370.  Here, even if technology is used to provide or validate the data, it too is "merely described as the source of the data."  Nothing requires a particular method or a particular machine to gather or validate the data.  Also, in *DealerTrack*, despite the claims specifically requiring the process to be "computer aided," the limitations were still meaningless because they did not specify "any level of involvement or detail" with ***how the invention*** should be computer aided.  674 F.3d at 1334.  Similarly in *Fort Properties*, some claims required computers to "generate a plurality of deedshares."  671 F.3d at 1323.  This Court found that the patentees "simply added a computer limitation to claims covering an abstract concept—that is, the computer limitation is simply

---

[6]  Cardpool makes much out of an expert declaration that it provided to the district court.  Appellant Br. at 28.  Even assuming their expert, Mr. Johnson, is correct and the claims require a computer and network, it still amounts to nothing more than taking the abstract idea and performing it on a computer.

insignificant post-solution activity." *Id.* at 1323-1324. Without something more meaningful, the claims "cannot qualify as patent-eligible." *Id.* at 1324.

Cardpool relies on *Research Corporation Technologies, Inc. v. Microsoft Corporation* as support, but this case is easily distinguishable. 627 F.3d 859 (Fed. Cir. 2010). The claims at issue in *Research Corporation* were directed towards "digital image halftoning" where the patents-at-issue claimed a method for transforming a digital image, pixel by pixel, using very specific steps. *Id.* at 868 ("The '310 and '228 patents claim methods . . . for rendering a halftone image of a digital image by comparing, pixel by pixel, the digital image against a blue noise mask."). As in *Diehr*, the patentees in *Research Corporation* took abstract mathematical and algorithm concepts and applied them very specifically to a particular process. *Id.* Indeed, the Court described the invention as claiming "functional and palpable applications in the field of computer technology." *Id.* at 868-69. Unlike the patent in *Research Corporation*, the '048 patent does not claim a particular application of a gift card exchange; it does not claim a "functional and palpable application[] in the field of computer technology"—it does not claim anything in the field of computer technology other than using a "personal computer" for the first step of a five-step method claim. *Id.*

The incidental use of a computer here is even less consequential than it was in *CyberSource*, *DealerTrack*, or *Fort Properties*. There is no significant level of

detail or involvement, either in the claims or the specification, as to how a computer should aid the invention. The only detail about any computer is that computer devices will either have a single processing unit or multiple processing units and processes may be performed in software, hardware, or both. A30, col. 1:63-col. 2:9. But every computer has a processor and all computer processes are performed in software, hardware, or some combination. Similarly, Cardpool argues that the abstract exchange system "employs computer algorithms and interfacing among a number of computer systems in the network" (Appellant Br. at 16) but this is conclusory, unsupported, and again adds no real meaning to the claim. There are no details in the specification (and certainly not the claims) of any algorithms, interface, or any network infrastructure because they are not necessary to understand the invention. A30, col. 1:57-62. The references in the specification are general and add nothing meaningful to the abstract idea of exchanging gift cards for a fee.

Moreover, Cardpool cannot make a meaningful limitation materialize out of nothing simply by asserting that all factual inferences must be viewed in its favor. Those factual allegations must be identified by Cardpool and rise above a "speculative level." *Twombly*, 550 U.S. at 555. In other words, Cardpool cannot say that the claims require a "specially programmed computer" when there is

41

absolutely no support for that argument in the claims, in the specification, or anywhere else.

Cardpool's argument that the invention requires a "specially programmed computer" is based on language from *In re Alappat*, where this Court said: "We have held that such programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." Appellant Br. at 30 (quoting *In re Alappat*, 33 F.3d 1526, 1544 (Fed. Cir. 1994). When the Court said "such programming" in *Alappat* it was referring to a specific application of using software to create a smooth waveform in an oscilloscope. *Id.* This was a specific application of an abstract concept. The claims at issue in *Alappat* and those at issue here are worlds apart.

*Alappat* does not stand for a proposition that merely claiming an abstract idea on a computer in and of itself makes the computer "specially programmed" and immediately shields the patent from a section 101 challenge. *See CyberSource*, 654 F.3d at 1375 ("But we have never suggested that simply reciting the use of a computer to execute an algorithm that can be performed entirely in the human mind falls within the *Alappat* rule."). Such a reading would anesthetize the abstract idea exception and undo the Supreme Court's holding in *Flook*, *Benson*,

and *Bilski* as well as this Court's holdings in *CyberSource, DealerTrack,* and *Fort Properties*.

To take *Bilski* as an example, the hedging algorithm would have had to be implemented by some particular software, or a hardcoded machine, with particular, likely complex algorithms. If the Court were to read *Alappat* as Cardpool suggests, then any general-purpose computer in *Bilski* is instantly transformed into a "specially programmed computer" and is outside the abstract idea exception. But that is not what happened in *Bilski* or the myriad other cases cited and that is not how *Alappat* should be read. *Alappat* makes sense when understood within the factual context of that case. The general test, however, is perhaps best stated in *Ultramercial*. A computer cannot confer eligibility by itself unless it is meaningfully related to the invention. *Ultramercial*, 722 F.3d at 1348.

Because there is no meaningful use of a computer or network in the claims, or even disclosure of a specially programmed computer or particular network in the specification, the abstract idea claimed by the '048 patent does not satisfy the machine-or-transformation test and does not meaningfully limit the claim.

## F. The '048 Patent Contains No Other Meaningful Limitations

Cardpool argues that even if the patent does not satisfy the machine-or-transformation test, it is not abstract because it is meaningfully applied with other concrete and tangible steps. Again, Cardpool uses lawyer's argument in place of

the actual claim language.  Cardpool transforms claim 1 into "a validated, remote gift card exchange using a networked and specially-programmed computerized gift card exchange system" even though the words "remote," "networked," "specially programmed," "computer," and "computerized" do not appear anywhere in claim 1.  *See* Appellant Br. at 36-37; *see also id.* at 8 ("Claim 1 contains specific computerized steps performed by the computerized gift card exchange system."). Notably, Cardpool has not described the particular aspects of any of these terms with any measure of detail—it does not explain how the computer is specially programmed or any particular or specific aspect of the network.  Cardpool does not do this because it cannot; the intrinsic evidence does not support any meaningful, practical application.

But even if one accepts Cardpool's premise that the claims contain such inherent limitations, the claims still fail because those limitations add no meaning to the abstract idea.  The limitations Cardpool relies on are (1) the invention being directed towards a gift-card exchange; (2) the process requiring a validating step; (3) the method requiring a network; and (4) the method requiring a specially programmed computer.[7]  Each limitation is a broad, insignificant step that provides no real direction.   These are not meaningful or substantive steps that "narrow,

---

[7]  All but the first have been addressed already in this brief.

confine, or otherwise tie down the claim so that, in practical terms, it does not

cover the full abstract idea itself." *See CLS Bank*, 717 F.3d at 1282.

### 1.    A Mere Field-of-Use Limitation Is Not Meaningful

Limiting the abstract idea of exchanging goods for a fee to one field of use,

(*i.e.*, gift cards) does not transform the abstract concept into something patent

eligible.  In *Bilski*, the patentee argued that even if his claim was abstract as to

hedging, some of this claims were directed to "how hedging can be used in

commodities and energy markets." 130 S. Ct. at 3231.  The Court rejected this

argument.  "*Flook* established that limiting an abstract idea to one field of use . . .

did not make the concept patentable."  *Id.*; *Ultramercial*, 722 F.3d at 1346

("[E]ven if a claim does not wholly pre-empt an abstract idea, it still will not be

limited meaningfully if it contains only insignificant or token pre- or post-solution

activity—such as identifying a relevant audience, a category of use, ***field of use***, or

technological environment.") (emphasis added); *Bancorp Servs.*, 687 F.3d at 1280

(rejecting the argument an abstract concept was meaningfully limited when

confined to insurance markets); *DealerTrack*, 674 F.3d at 1334 (rejecting the

argument that abstract idea of clearinghouse is patent eligible merely by applying it

to the field of car loans because that "is precisely the kind of limitation held to be

insufficient to confer patent eligibility").  Cardpool's attempt to confer

patentability on its abstract concept by limiting it to gift cards is no different than

what was rejected in each of these cases.  Cardpool does not distinguish these

holdings or attempt to explain why its field-of-use limitation should be allowed.  It

is no better to allow Cardpool to preempt all gift-card exchanges than it is to allow

it to preempt all exchanges of any good.

### 2.  Cardpool's "Validating" Limitation Is Not Meaningful Because It Is a Routine, Broad, Data-Gathering Step

Cardpool argues throughout its brief that the step related to "validating the

data" in the claim 1 meaningfully limits the patent.  See, e.g., Appellant Br. at 37.

As discussed already, this step is routine data gathering, and is too broad to provide

any real direction.

### 3.  The '048 Patent Does Not Include Meaningful Claims Relating to Computer or Network Technology

Cardpool again argues that the '048 patent includes meaningful claims

related to computers and networks.  Appellant Br. at 38.  These issues have been

discussed at length above.  Briefly, there are no meaningful limitations concerning

any special computer or network technology because:  (1) the claims are entirely

silent as to any such limitations; (2) the specification does not disclose any special

computer implementation or network architecture (indeed, the patentees go to

lengths to say there is nothing limiting about the particular technology used); and

(3) even assuming the claims require use of a computer or network, it amounts to

simply taking the abstract concept and applying it on a computer, which does not meaningfully limit the claim.

### 4.    The Dependent Claims Do Not Meaningfully Limit the Patent

The dependent claims fare no better than claim 1.  Claims 2 and 3 recite "providing data" that includes a "merchant name" (claim 2) and "an account number" (claim 3).  Like the validating steps of claim 1, these claims cover "literally *any* method for detecting fraud" based on the gathered data because the gathered data will always practically include the name and number of the card.  *See CyberSource*, 654 F.3d at 1373 (emphasis in original).  Nothing about either dependent claim limits or cabins the abstract idea to a practical or concrete reality.

Claim 6 requires "employment of a personal computer."  As this Court has repeated, "the mere reference to a general purpose computer will not save a method claim from being deemed too abstract to be patent eligible."  *Ultramercial*, 722 F.3d at 1348.  Claim 6 does not tie the abstract concept of a gift card exchange to a specific way of doing something with technology or a specific computer or network implementation.  The presence of a "personal computer" in claim 6 also confirms the absence of any technology in the other claims.  Moreover, the only element of any claim that is computerized is the "providing data" step, yet another indication that a computer is not central to the claims or even necessary to practice the claims save the one step in claim 6.

47

Claim 7 requires "releasing funds associated with the first gift card by a vendor." This is yet another routine, conventional step that would be necessary for every practical application of the claim. Further, claim 7 gives no meaningful detail as to how this step is to be applied or performed. *See Mayo,* 132 S. Ct. at 1300 ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."); *Fort Props.*, 671 F.3d at 1323 ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.") (internal quotation marks omitted).

Claims 10 and 11 concern correlating the exchange with data such that the data may be mined later. Like claims 2 and 3, these steps are also "mere data gathering." They do not claim any specific way to gather, store, distribute, or use the data. These limitations are similar to the patent at issue in *Flook*, which the Supreme Court found wanting as it "did not purport to explain how these other variables were to be determined, nor did it purport to contain any disclosure relating to the chemical processes at work, the monitoring of process variables, or the means of setting off an alarm or adjusting an alarm system." *Diehr*, 450 U.S. at 186–87 (discussing *Flook*, 437 U.S. at 586) (internal quotation omitted).

Without question the claims add nothing except inherent steps that are incidental to the claimed invention. Nothing in claim 1 or any of the asserted

dependent claims provides a limitation that is central or integral to the solution itself.

### G. The District Court Opinion Was Well Reasoned and Correctly Decided

Cardpool argues that the district court made several errors, including: (1) not applying the machine-or-transformation test; (2) not conducting any claim construction; (3) not conducting a claim-by-claim analysis; and (4) not appreciating the required exchange system. Cardpool manufactures each of these supposed errors as a basis for appeal and even takes the rather extraordinary step of calling the district court's opinion a "travesty." Appellant Br. at 35. But the district court did everything that Cardpool says it did not and resolved and subsidiary issues in Cardpool's favor. The district court understood the '048 patent for what it is: the abstract idea of "millennia old practice of an in-kind exchange of chattel—plus a computer." A4.

### 1. The District Court Properly Understood and Applied the Machine-Or-Transformation Test

The district court did not "entirely dismiss" the machine-or-transformation test, as Cardpool argues. Appellant Br. at 30. Rather, the district court analyzed the patent and the claims and found that no machine was meaningfully at issue:

> Plaintiff's computerized implementation adds nothing of significance to the abstract idea underneath. For example, plaintiff contends that the patented invention uses a gift card that is "a physical representation of an electronic

account," and that the exchange "can only take place after data electronically associated with the first gift card is validated." In other words, a modern computer takes the place of a more humble technology, the ledger; though the tool has changed, the activity is the same. This is an entirely routine use of a computer that "applies" the validation step in the most basic sense of the term, and is exactly the form of technological application the Supreme Court rejected in *Mayo*. "Purely conventional or obvious pre-solution activity is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Mayo*, 132 S. Ct. at 1298.

A4. In essence, the court found that the patent failed the machine-or-transformation test. Cardpool complains that the district court did not conduct "an inquiry focused on 'whether the claims tie the otherwise abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something . . . .'" Appellant Br. at 30 (quoting *Ultramercial*, 722 F.3d 1348 (emphasis in original)). That is precisely what the court did and precisely why the machine-or-transformation test was inapplicable.[8] Use of a computer that is "entirely routine" and merely taking the place of a ledger is not a specific machine or being used in a specific way.

---

[8] The district court also properly said that the machine-or-transformation test is not dispositive and that at bottom, the real inquiry is whether the patent claims only an abstract idea. A4 (citing *Bilski* and *Mayo*). Even if the district court did not apply the machine-or-transformation test in precisely the way Cardpool wishes, there is no question that the test does not support patent-eligibility where, as here, the claims, at most, simply say practice an abstract idea on a computer.

Cardpool's statement that "[i]t is undisputed that the Asserted Claims are tied to a computer in the specific way claimed and that the computerized exchange platform plays a meaningful role in the performance of the claimed invention" is entirely wrong.  Appellant Br. at 30-31.  That is the heart of this dispute.  Plastic Jungle disagrees with this statement; the district court disagreed with this statement; and the patentees disagreed when they stated in the specification that no particular computer hardware, computer program, or network architecture is necessary to practice the patent.  A30, col. 1:57-62; A31, col. 4:29-37.  As described above, and for the reasons well enunciated by the district court, the '048 patent is not directed to a specific way of doing something with a computer or to a specific computer.  The machine-or-transformation does not apply and the claims contain no meaningful limitations related to computer technology.

> **2.    The District Court Properly Found That It Was Unnecessary to Construe the Claims and Alternatively Assumed Cardpool's Proposed Constructions**

Cardpool argues that it was error for the district court not to engage in formal claim construction.  The district court cited this Court's precedent and found that there is no "flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."  A5 (quoting *Bancorp Servs.*, 687 F.3d at 1273).  Cardpool does not address that authority at all.

As discussed, while claim construction may sometimes be necessary, that is not always the case, and it is certainly not the case here.

Moreover, Cardpool does not posit precisely what claim language should have been construed and how it should have been construed so as to save the patent.  Appellant Br. at 31-32.  Cardpool makes general statements that the claims should have been construed to require the use of a computer and network architecture.  The district court considered this position, and "even assuming" it was correct, still found that any such limitations did not meaningfully limit the patent.

> Claim construction is not necessary. Even assuming, *arguendo*, that every step in the patent were implemented with a computer, or the magic of the internet, the invention is unpatentable. Plaintiff's attempt to 'inextricably intertwine' the claim terms with computerized application is unavailing. "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300.

A5-A6.[9]  In so doing, the district court "adopted a construction most favorable to patentee Cardpool," as an alternative basis for its holding.  This is exactly what

---

[9]  Cardpool appears to recognize this at one point in its brief when it states "the District Court acknowledged that the claims required computer implementation . . . ."  Appellant Br. at 12.

Cardpool incorrectly says that the district court did not do. Appellant Br. at 32 (citing *Ultramercial*, 722 F.3d at 1340).

The district court did not err by not formally construing the claims. The claim language is plain and does not want for construction. Yet, the court resolved all identified construction issues in Cardpool's favor and still found the claims ineligible.

### 3.  The District Court Considered All Claims of the '048 Patent

Cardpool incorrectly asserts that "the District Court failed to conduct a claim-by-claim determination." Appellant Br. at 32.[10] In its analysis, the district court recognized that Cardpool made arguments "at length" as to "each of the other steps in the patent" and that "the invention must be viewed as a whole." A4. The district court then found that "when viewed as a whole" these steps "add[] nothing that is not present in the individual steps. It amounts to little more than the description of a complete transaction — what defendant accurately characterizes as a 'millennia old practice of an in-kind exchange of chattel' — plus a computer." *Id.* Similarly, this Court has explained that a claim-by-claim analysis must be performed, but has reviewed representative claims without providing a detailed

---

[10] Cardpool's claim construction argument bleeds into its argument that the district court should have viewed the claims as a whole, although the two issues are distinct. Plastic Jungle will not repeat its response to the claim construction position except to say that there was no error for the reasons already given.

discourse on each dependent claim. For example, in *Ultramercial*, although several claims were asserted, the Court focused on independent claim 1. *Ultramercial*, 722 F.3d at 1349-54. Similarly, in *CLS Bank*, both Judge Lourie's and Judge Rader's opinions focused on representative claims of the patents-in-suit. 717 F.3d at 1285, 1289 (J. Lourie's opinion); *id.* at 1311 (J. Rader's opinion).

This Court has not set forth a singular method for district courts to conduct a section 101 analysis. To the extent that the district court did not properly address each individual claim, Plastic Jungle has shown that all claims fall within the abstract idea exception here, as it did before the district court. Moreover, Cardpool does not explain what dependent claim provides a meaningful limitation or a particular application of the abstract idea other than repeating its argument that its claims require the use of a specially programmed computer. Thus, Cardpool effectively concedes that all claims rise and fall together.

### 4.    The "Required Exchange System" Leaves Nothing to Be Appreciated

Finally, Cardpool argues that the district court failed to "appreciate the required exchange system." Appellant Br. at 33. It could be said that the patentees themselves also failed to appreciate the system, as all claims are method claims, not system claims. Contrary to Cardpool's assertion, not only did the patentees not claim any "exchange system"—abstract or particular—they did not claim or disclose any particular computer method, computer technology, or network

54

architecture.  In this iteration of its argument, Cardpool discusses *Benson*, where

the Supreme Court found that the patent claimed the abstract concept of converting

binary-coded decimal numbers into pure binary numbers.  409 U.S. at 64, 71-72.

In that decision, the Court found that applying the abstract concept on a computer

did not significantly limit the claim:  "The mathematical formula involved here has

no substantial practical application except in connection with a digital computer,

which means that if the judgment below is affirmed, the patent would wholly pre-

empt the mathematical formula and in practical effect would be a patent on the

algorithm itself."  *Id.* at 71-72.  Cardpool tries to distinguish this case by saying

that where "the claimed method 'cannot be performed' without a machine, the

claims are patentable."  Appellant Br. at 34 (citing *SiRF Tech.*, 601 F.3d at 1333).

Not only is that not the law, it does not distinguish the case.  As the *Benson* Court

explained, it was because routine use of a computer would be required in every

application that such a limitation would not abrogate preemption concerns.  Even

assuming the patent cannot be practiced without a computer, *Benson* is

instructive.[11]  Requiring routine use of a computer in every situation will no more

allay preemption concerns here than they did in *Benson*.

_____

[11]  Cardpool argues that use of a computer is necessary because "there is no
way to mentally validate a gift card" or no way "of 'mentally' releasing funds."
Appellant Br. at 34.  This misses the point.  The question is whether technology is
required to perform the claims, not whether all claims can be performed
"mentally."  Cardpool seems to conflate pure mental performance with human

The '048 patent does not claim a computer as a specific part of the solution, integral to the performance of the method, or improve computer technology. *See Ultramercial*, 722 F.3d at 1348 (citing *SiRF Tech.*, 601 F.3d at 1332-33). Whether a computer is used to practice the '048 patent does not change the result: the '048 patent claims only the abstract idea of exchanging gift cards for a fee.

## VI.  **CONCLUSION**

For the foregoing reasons, the '048 patent is invalid under 35 U.S.C. § 101 and the district court order should be affirmed in its entirety.

Dated:  September 16, 2013                    Respectfully submitted,

/s/ *Andrew F. Pratt*
Andrew F. Pratt
pratt@adduci.com
Adduci, Mastriani & Schaumberg, L.L.P.
1133 Connecticut Avenue, N.W.
12th Floor
Washington, DC 20036
Tel: 202.467.6300
Fax: 202.466.2006

---

interaction, using pen and paper, or any other non-technological method.  As explained, two individuals exchanging gift cards can practice all the steps of claim 1 without a computer or a network.

56

Elizabeth Day
eday@feinday.com
Marc Belloli
mbelloli@feinday.com
Feinberg Day Alberti & Thompson LLP
1600 El Camino Real
Suite 280
Menlo Park, California 94025
Tel: 650.618.4360
Fax:  650.618.4368

*Attorneys for Defendant-Appellee*
*Plastic Jungle, Inc.*

PJI700113

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **CORRECTED BRIEF OF DEFENDANT-APPELLEE PLASTIC JUNGLE, INC.** was served to the parties, in the manner indicated below, this 16th day of September 2013**:**

## COUNSEL FOR PLAINTIFF CARDPOOL, INC.

| | |
|---|---|
| Edward Alan Pennington<br>Chadwick Algenon Jackson<br>John Paul Moy<br>SMITH, GAMBRELL & RUSSELL LLP<br>Suite 400<br>1055 Thomas Jefferson St., NW<br>Washington, DC 20007 | ☒ **ELECTRONIC MAIL**<br>(epennington@sgrlaw.com<br>cjackson@sgrlaw.com;<br>jmoy@sgrlaw.com)<br>☐ **VIA FIRST CLASS MAIL** |
| Brian E. Mitchell<br>MITCHELL + COMPANY<br>Suite 1400<br>4 Embarcadero Center,<br>San Francisco, CA 94111 | ☒ **ELECTRONIC MAIL**<br>(brian.mitchell@mcolawoffices.com)<br>☐ **VIA FIRST CLASS MAIL** |
| James S. McDonald<br>Blackhawk Network, Inc.<br>6220 Stoneridge Mall Rd.<br>Pleasanton, CA 94588 | ☒ **ELECTRONIC MAIL**<br>(jmcdonald@mcdonaldj.com)<br>☐ **VIA FIRST CLASS MAIL** |

*/s/ Andrew F. Pratt*
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

PJI100013 CAFC.docx

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Plastic Jungle, Inc. hereby certifies that, in compliance with Fed. R. App. P. 32(a)(7)(B)-(C), the attached **CORRECTED BRIEF OF DEFENDANT-APPELLEE PLASTIC JUNGLE, INC.** is proportionally spaced, has a typeface of 14 point Times New Roman, was prepared using Microsoft Word, and contains 13,544 words.

Dated:  September 16, 2013

*/s/ Andrew F. Pratt*
Andrew F. Pratt